[Civ. No. 16251. First Dist., Div. Two. Dec. 2, 1954.]

STATE OF CALIFORNIA, SUBSEQUENT INJURIES FUND, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and CHARLES R. SPRINGER, JR., Respondents.

Edmund G. Brown, Attorney General, and Gerald F. Carreras, Deputy Attorney General, for Petitioner.

Everett A. Corten and T. Groezinger for Respondents.

DOOLING, J.—Petitioner State of California, hereinafter for convenience called Subsequent Injuries Fund, seeks review of an award made against it by respondent Industrial Accident Commission in favor of respondent Springer, an industrially injured employee with a preexisting permanent disability.

Springer is a deaf mute; on May 13, 1952, he sustained an industrial injury to the fingers of his left hand. For that injury on March 3, 1953, respondent commission awarded him permanent disability benefits for a 6½ per cent permanent disability. Thereafter Springer applied for additional compensation under Labor Code, section 4751, from Subsequent Injuries Fund, basing his claim upon his preexisting disability.

At the hearing on his application he testified substantially as follows: He was 37 years old and has been a deaf mute since birth. He attended a school for the deaf through the second year of high school. Since the completion of his education he has been fairly steadily employed, although his congenital defects did handicap him in securing employment, having worked as an auto painter and at several related occupations. At the time of his injury he had been employed by the Ford Motor Company as a metal finisher for eight years. After his injury he was able to return to his job with Ford and is presently employed in the same job and at the same wage as before his injury.

Mr. Welch, the supervisor of the Permanent Disability Rating Bureau, recommended a permanent disability rating of 79 per cent for Springer's deaf-mutism and a rating of 82 per cent for his deaf-mutism combined with his hand injury. Mr. Welch testified at a further hearing that he used the 1950 rating schedule formula in arriving at his percentage of disability recommendations and that he gave Springer's deafness and loss of speech the same rating as they would have been given had they been caused by recent industrial trauma.

Respondent commission found that Springer's industrially caused permanent injury in combination with his preexisting permanent disability amounted to 82 per cent. Springer was awarded permanent disability benefits against Subsequent Injuries Fund on this basis.

Labor Code, section 4660, provides:

"(a) In determining the percentages of permanent disability, account shall be taken of the nature of the physical injury or disfigurement, the occupation of the injured employee, and his age at the time of such injury, *consideration being given to the diminished ability of such injured employee to compete in an open labor market.*

"(b) The commission may prepare, adopt, and from time to time amend, a schedule for the determination of the percentage of permanent disabilities in accordance with this section. Such schedule . . . without formal introduction in evidence shall be *prima facie evidence* of the percentage of permanent disability to be attributed to each injury covered by the schedule." (Emphasis ours.)

Pursuant to section 4660, subdivision (b), respondent adopted its present Permanent Disability Rating Schedule.

Petitioner argues that because the purpose behind the Permanent Disability Rating Schedule is to provide for the future rehabilitation of a disabled employee and because it was compiled to be used for industrially caused disabilities, the schedule, when applied to a case of permanent disability resulting from congenital defects to which the applicant has already adjusted himself does not give an accurate result.

In this connection it must be remembered that the schedule adopted by the commission is only prima facie evidence of the percentage of permanent disability. On the facts of this case we must hold that this prima facie evidence has been rebutted by the other uncontradicted evidence before the commission.

Mr. Welch not only testified that in rating the deafness and mutism they were rated the same as if they had been caused by recent industrial trauma. He further testified: "One of the underlying principles of the schedule was the rehabilitation theory; and that assumed that for an injury, that on an average a man would require a certain period of time in order to adjust himself to the handicap, and at the end of that period he would have adjusted himself as much as could reasonably be expected . . ." This rehabilitation theory is basic in determining the extent of partial permanent disability in compensation cases. (1 Campbell, Workmen's Compensation, p. 728; *Pacific Gas & Elec. Co.* v. *Industrial Acc. Com.*, 126 Cal.App.2d 554, 557-558 [272 P.2d 818].)

█ The patent error of the commission was to rate a congenital condition of deaf-mutism to which the applicant had so far adjusted himself as to be reasonably employable, after the injury as well as before, by the same standard that it would have been rated if the applicant had lost his hearing and speech in the same accident in which he received the injury to his hand. It is obvious that his disability would have been much greater if he had had the normal faculties of speech and hearing up to the time of his accident and had lost them then, with the whole period of adjustment to their loss before him, than it could possibly be with the whole period of adjustment to their lack behind him.

This is not to say that a congenital deaf mute who receives any permanent industrial injury may not be disabled to a greater extent thereby than one who has the normal faculties of speech and hearing. To his congenital handicap is added another and in combination they may well create a greater

handicap than the same injury would be to a person otherwise normal. It is to say that he is not disabled to the same extent as one would be who lost his speech and hearing as a part of the same industrial injury.

The award is annulled with directions to the commission to take such further proceedings as may be proper in accordance with this opinion.

Nourse, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied December 31, 1954, and respondent's (Industrial Accident Commission) petition for a hearing by the Supreme Court was denied January 26, 1955. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.