[Civ. No. 16129.   First Dist., Div. Two.   July 15, 1954.]

PACIFIC GAS AND ELECTRIC COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, EDWIN C. BURTON et al., Respondents.

Robert H. Gerdes, Raymond W. White, R. A. Whittlesey and C. T. Van Deusen for Petitioner.

Everett A. Corten and T. Groezinger for Respondents.

KAUFMAN, J.—This is a petition for a writ of review in which petitioner Pacific Gas and Electric Company seeks to review an award of the Industrial Accident Commission of 77 per cent permanent disability to its employee, Edwin C. Burton, for an injury sustained in the course of his employment.

On July 6, 1942, Burton was awarded partial permanent disability indemnity against the Associated Indemnity Corporation for permanent disability of 25½ per cent arising out of an accident while in the employ of the National Tank and Manufacturing Company. He sustained some loss of motion in his left ankle and foot, and some damage to the lower leg, for which he was compensated for 102 weeks at $13.58 per week.

On January 6, 1951, Burton while employed by Pacific Gas and Electric as a hand pipe wrapper, was knocked down and run over by a backing truck, sustaining fractures of the pelvis, fracture dislocation of the right sacroiliac joint with displacement of the innominate bone and traumatic asphixia with capillary hemorrhages of the upper chest, neck, face and scalp.

On January 2, 1952, Burton filed application for adjustment of claim, and the Subsequent Injuries Fund was joined as a party defendant. At the hearing Burton testified on cross-examination by counsel for the Subsequent Injuries Fund that there was an improvement in his left ankle during the

10-year period following the ankle injury. The 1951 injury caused a one-inch shortening of the employee's right leg, as well as other disabilities. The Permanent Disability Rating Specialist recommended a permanent disability rating of 77 per cent attributable solely to the injury of January 6, 1951. Only 5 per cent was added for the preexisting injury (which in 1942 had been rated at 25½ per cent), making a combined permanent disability rating of 82 per cent.

Petitioner contends that the commission has no power to award a percentage of permanent disability in excess of 100 per cent to an individual employee, and argues that if the permanent disability rating of 25½ per cent is added to 77 per cent the total is 102½ per cent. Since the Labor Code refers to total disability as synonymous with 100 per cent, petitioner maintains that it is illogical to assume that an employee could be more than 100 per cent permanently disabled. Section 4658, Labor Code, provides that if the injury causes permanent disability "the percentage of disability to total disability shall be determined and the disability payment computed" according to the schedule set forth in the section.

Section 4750, Labor Code, provides as follows: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment.

"The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury *as though no prior disability or impairment had existed.*" (Emphasis ours.)

From a study of section 4750 we must conclude that in cases such as the present, the commission must consider the later injury apart from the prior disability, and it must not be considered in relation to the prior injury or impairment in determining the rating. (See *Wolski* v. *Industrial Acc. Com.* 70 Cal.App.2d 427, 429-431 [161 P.2d 283].) It is clear from the reports and findings of the referee that the 77 per cent permanent disability was attributable solely to the 1951 injury without reference to the injury of 1940. When the preexisting disability was added to the later injury of 77 per cent, the combined injuries produce a rating of 82 per cent. The additional 5 per cent could not, of course, be

assessed against the present employer, under section 4750, Labor Code, but under provisions of section 4751, he was entitled to receive the 5 per cent from the Subsequent Injuries Fund provided by the state.*

Petitioner cited *State Compensation Insurance Fund.* v. *Industrial Acc. Com.*, 43 Cal.App.2d 233 [110 P.2d 510], a case in which an employee sustained two separate injuries suffering total temporary disability from each of them. The periods of total temporary disability overlapped, and the commission held that the employee could not receive 200 per cent total temporary disability for the overlapping period, holding in effect that the employee could not be more than 100 per cent temporarily totally disabled *at one time.* ■ The period of temporary total disability is that period when the employee is totally incapacitated for work. It is entirely logical to maintain that an employee can be only 100 per cent incapacitated for work at any given time. And under the commission's rating schedule an employee cannot be more than 100 per cent permanently disabled, in any one accident. Nor can he be more than 100 per cent permanently disabled by a series of accidents as measured by the commission's rating schedule when ratings are combined, even though if added they total over 100 per cent.

■ In the instant case the employee received a rating of 25½ per cent permanent disability in 1942 entitling him to compensation for 102 weeks thereafter. When the 102 weeks had expired some time in 1944 the employee received no further compensation for the 1940 injury. It must be assumed that the employee was then fully compensated for the loss of earning power suffered in that accident. The theory of permanent disability rating, according to Campbell, is that the employee will be able to rehabilitate and readjust himself to his new earning capacity within an average period, and the ratings are computed so as to provide disability during

---

*"Sec. 4751, Labor Code: If an employee who is permanently partially disabled receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the combined effect of the last injury and the previous disability or impairment is a permanent disability equal to 70 percent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury, compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article."

that estimated period. (1 Campbell, Workmen's Compensation, § 820.) Petitioner's interpretation of permanent disability, on the other hand, is that the injured workman can never be rehabilitated beyond the point when the permanent rating is made. It is contended that the employee herein must forever after in any proceedings be considered 25½ per cent permanently disabled, and have therefore only a potential possibility of 74½ per cent disability, even though conceivably he might sustain later injury conclusively presumed to be 100 per cent under section 4662, Labor Code. If the employee herein, during the 102 weeks in which he received compensation payments for the 25½ per cent permanent disability rehabilitated himself by training to become a skilled telegrapher, and then sustained industrial injury resulting in the loss of both his hands, the conclusive presumption of 100 per cent permanent disability would have to be applied, and clearly the 25½ per cent for the ankle injury could not be subtracted, even though the mathematical total of the two would be more than 100 per cent.

The legislation providing for the Subsequent Injuries Fund has been enacted with a view toward encouraging employment of handicapped persons, and if that fund occasionally is resorted to for payment of compensation of a worker more than 70 per cent permanently disabled from a combination of industrial injury and prior impairment or injury, such a legislative policy appears to be wiser and more economical than one which would discourage industry from employing handicapped workers no matter how skilled they might be. It cannot be contemplated that such policy will discriminate against an injured worker and in favor of industry. In this type of case the employer would have to pay 77 per cent permanent disability for this one injury to a worker who had not previously been injured, but would pay less to a worker who had some prior though unrelated handicap under petitioner's theory.

Petitioner relies on *Gardner* v. *Industrial Acc. Com.*, 28 Cal.App.2d 682 [83 P.2d 295], as authority that the percentage of disability which claimant sustained in a prior accident should be subtracted from the percentage awarded for the later accident. There a combined rating of 58¾ per cent was given for the whole injury when a workman's left leg was amputated above the knee. From that was subtracted a 12 per cent rating which was awarded in the State of Nevada for an injury to his left foot. The opinion does not

indicate whether or not the employee was at the time of the accident still being compensated for injury to the leg which was amputated. The case is, on its facts, clearly distinguishable from the present case, as here we do not have a case of injury to the same part of the body. The case reiterates the rule that the determination as to the later injury must be made without relation to the earlier injury, and that no compensation for disability attributable solely to the prior injury or disease may be included in the award for which the employment was in no wise responsible. The employer herein has not shown that the evidence does not support a finding that all of the described factors of disability which were rated 77 per cent were caused solely by the 1951 injury, nor have they shown that any factor of disability from the 1940 injury was included in arriving at the rating of 77 per cent for the last injury.

Petitioner contends finally that the percentage of 25½ per cent is res judicata on the percentage to be given the prior injury. It is true that the doctrine of res judicata applies to awards of the Industrial Accident Commission and to issues actually decided in such cases as between the same parties or those in privity with them. (*French* v. *Rishell,* 40 Cal.2d 477 [254 P.2d 26].) The only issue to be decided in the present case that is of any concern to petitioner is the percentage of the last injury. No issue concerning this injury was involved in the 1942 award. No factors of the 1940 injury were used in arriving at the 77 per cent. As far as the Subsequent Injuries Fund is concerned, it is a new party, and its liability for the residual disability in excess of 77 per cent is a new issue.

No error appears to have been committed by the commission in assessing petitioner's liability and the award should be affirmed.

Ordered award affirmed.

Nourse, P. J., and Dooling, J., concurred.