[S. F. No. 21156. In Bank. Jan. 22, 1963.]

STATE COMPENSATION INSURANCE FUND, Petitioner,
v. INDUSTRIAL ACCIDENT COMMISSION and
HAROLD S. HUTCHINSON, Respondents.

46

T. Groezinger, Loton Wells and Henry F. O'Connell for Petitioner.

Everett A. Corten, Rupert A. Pedrin and Joseph E. Smith for Respondents.

PETERS, J.—By this petition, the State Compensation Insurance Fund seeks the annulment or modification of a workmen's compensation award made to Harold Hutchinson by the Industrial Accident Commission. In our opinion the award was excessive.

On July 7, 1958, Hutchinson injured his neck when he fell

while working within the course and scope of his employment. Based upon a finding of ''Constant minimal pain in the back of neck extending out over left shoulder, at times extending to the right shoulder, at times extending to the fingertips of both hands; at times pain becomes slight, particularly in performing overhead work, climbing ladders, and scaffolds, becoming moderate on lifting over 35 lbs.,'' the commission rated his resulting partial permanent disability at 26 per cent, and made an award accordingly. The correctness of this award is conceded. On November 17, 1958, Hutchinson again was injured in the course and scope of his employment. While lifting a heavy steel beam he suffered a sharp burning sensation in his lower back. On application to the commission a second award based upon a rating of 26 per cent partial permanent disability was made. The factors of disability upon which this second award was made were ''Minimal low back pain increased to slight on heavy work. He wears a corset-type brace which reasonably controls the low back pain.'' Thus, the first and second disabilities are not identical, but they overlap.

On cross-examination, the rating expert testified that both 26 per cent disability ratings were nonscheduled or judgment ratings, and that if the factors upon which both awards were based were combined then Hutchinson's present combined disability would not be 52 per cent but something more than 26 per cent. In other words, the factors of disability attributable to the prior injury alone, or to the second injury alone, assuming no prior disability, warrant a rating of 26 per cent; but the present combined disability attributable to the results of both injuries when taken together warrants a rating of something more than 26 per cent but less than 52 per cent.[1]

---

[1] The record shows the following:

Counsel for Fund: ''Now, if you were to add to this rating [the rating for the second injury] the following description—will you tell me what would be the result if in addition to the described factors you added this: constant minimal pain in back of neck extending over left shoulder, at times extended to the right shoulder, at times extending to the finger tips of both hands, at times pain becomes slight, particularly in performing overhead work, climbing ladders and scaffolds, becoming moderate on lifting over 35 pounds [i.e., the description of disability due to the prior injury]. . . .''

Referee: ''That's not proper cross examination of the rating expert. There is no evidence in this case that that type of disability was caused by this injury. . . .''

Counsel for Fund: ''. . . I think it's a proper question to inquire if

It is undisputed that there has been no improvement in Hutchinson's disability due to the first injury.

The fund, compensation insurer of Hutchinson's employer at the time of the second injury, contends that the rating expert's testimony demonstrates that the second award amounts to an unwarranted pyramiding of compensation. On this ground, it petitioned the commission for reconsideration of the second award. The commission, in denying this petition, stated the applicable rule to be that if separate parts of the body are injured in separate accidents, each injury must be rated separately and the combined disability is immaterial. Based on this theory, it denied the petition for reconsideration, and upheld the award of 26 per cent permanent disability attributable to the second injury. The fund seeks annulment or modification of the award on the ground that this rule as here applied is not sanctioned by Labor Code section 4750, the provision applicable to this problem.

Labor Code section 4750 provides that, "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed." ▆▆▆ This section has been interpreted to mean that, "An employer [or his insurer] of a workman who has

---

both ratings are considered together, whether or not it would make a difference in the total rating.''

Referee: ''It's immaterial.''

Counsel for Fund: ''You're not going to allow me to ask the question?''

Referee: ''No. I would say undoubtedly—let the record show undoubtedly the two together in this case would not equal the total.''

Counsel for Fund: "Would not equal 52%."

Referee: "Would not equal 52%. There is no question about it in my mind. That should satisfy you.''

Counsel for Fund: ''As a matter of fact, it may equal exactly 26%.''

Referee: ''That could be but I doubt it. Maybe, let's assume it totaled 30%. . . . Let's even assume that together they had both been 26% but still it's not material. . . .''

Counsel for Fund: "What would the two rate together, about 25% standard [about 30-35% adjusted]?''

Rating Expert: ''That's what I would think.''

Referee: "There you have your information."

a permanent physical impairment and who thereafter sustains a compensable injury resulting in permanent disability, is not liable for compensation for the ensuing combined disabilities, but only for that portion of permanent disability which is caused by the last injury.'' (*Smith* v. *Industrial Acc. Com.*, 44 Cal.2d 364, 365 [282 P.2d 64]. See also *Edson* v. *Industrial Acc. Com.*, 206 Cal. 134, 138-139 [273 P. 572].) The purpose of this statutory provision is to encourage the employment of physically disabled persons by assuring an employer that he will not be liable for the total combined disability present after an industrial injury, but only for that portion which is attributable to the subsequent industrial injury. (See 2 Larson, Workmen's Compensation Law (1961) pp. 54-61; Comment (1956) 44 Cal.L.Rev. 548.) The classic application of this rule of apportionment is the case in which an employee with only one eye loses the other in an industrial accident. While the loss of but one eye warrants a partial permanent disability rating of about 30 per cent (2 Hanna, Employee Injuries and Workmen's Compensation (1954) p. 265), the disability of a totally blind person is conclusively presumed to be 100 per cent. (Lab. Code, § 4662.) If the employer is held liable for the combined disability when a one-eyed employee loses his second eye he is likely to adopt a policy of not hiring one-eyed persons, or persons otherwise partially disabled. (See 2 Larson, Workmen's Compensation Law (1961) § 59.31, p. 59.)

 The parties in the instant case do not dispute the above rule or the reasons underlying it. They differ, however, on the method of computing the percentage of disability attributable to the subsequent industrial injury in this case. The conflict arises because often, as in the instant case, the sum of the disabilities due to separate injuries does not equal the combined disability. For example, the sum of the disability ratings caused by the loss of two eyes in separate accidents is about 60 per cent, while the combined disability is 100 per cent. Conversely, in the instant case, where the two disabilities overlap, the combined disability rating is less than the sum of the disability ratings due to both injuries when taken separately.

The fund's position is that since Hutchinson was 26 per cent disabled prior to the second injury and was only somewhat more than 26 per cent disabled after the second injury, it is illogical to attribute a full 26 per cent disability to the second

injury. *Gardner* v. *Industrial Acc. Com.*, 28 Cal.App.2d 682 [83 P.2d 295], is cited as authority for the fund's contention that the prior percentage disability should be subtracted from the combined disability after the second injury to determine the disability caused by the second injury. In that case an employee's left leg was amputated after an industrial injury. The loss of a leg was found to warrant a permanent disability rating of 58¾ per cent. However, the employee had previously suffered a disabling injury to his left ankle for which an award based upon a 12 per cent permanent disability had been granted. It was held that under section 4750 the prior 12 per cent disability must be subtracted from the 58¾ per cent when making an award for the disability caused by the leg amputation. This was so even though the second injury considered alone would have itself caused a 58¾ per cent permanent disability. The case is one in which the combined disability equaled the disability due to the second injury and was less than the sum of the disabilities due to the two injuries. Nevertheless, it was held that the correct award could not be made without taking into consideration the condition of the employee at the time of the second injury.

Hutchinson and the commission, on the other hand, contend that the *Gardner* case is applicable only when the successive injuries occur to the same anatomical part of the body. It is argued that in the instant case the neck and lower back are different parts of the body and, therefore, the case of *Pacific Gas & Elec. Co.* v. *Industrial Acc. Com.*, 126 Cal.App.2d 554 [272 P.2d 818] controls. That case, it is contended, states the rule that where the second injury is not to the same part of the body, neither the prior condition of the employee nor the combined disability after the second injury is material; that only the second injury may be considered and that if that injury itself would have caused a 26 per cent disability even though it does not add substantially to a preexisting disability, then a full 26 per cent award should be made. In that case a prior injury to the left leg resulted in a compensation award based upon a 25½ per cent permanent disability rating. In the second accident the employee fractured his pelvis and injured his back, chest, and head. This second injury caused a 77 per cent permanent disability. The contention was made that if an award were made for 77 per cent, then the employee would have recovered for a permanent disability in excess of 100 per cent; that the combined disability should have been

rated and from that the 25½ per cent subtracted to obtain the disability properly attributable to the second injury. In rejecting this contention, the court upheld the award based upon the 77 per cent rating. It was reasoned that, where the two injuries are completely independent, the terms of section 4750 clearly require consideration of the effect of the subsequent injury by itself without regard to the prior injury and that it was immaterial that the sum of disabilities would exceed 100 per cent although a combined disability rating could not exceed that figure.[2]

The *Gardner* case and the *Pacific Gas* case reached fair and correct results in their respective applications of Labor Code section 4750. An employee with a permanent left ankle disability for which he has been compensated and who thereafter loses the entire left leg ought not receive from his employer for the loss of that defective leg the same amount that an employee who loses a perfectly sound leg receives. (See *Hopper* v. *Firestone Stores,* 222 S.C. 143 [72 S.E.2d 71, 75].) On the other hand, a blind person, for example, who is conclusively presumed to be totally disabled, but who is gainfully employed and suffers an industrial injury ought to receive compensation for that injury even though he is then granted benefits for more than 100 per cent disability. (Cf. *Smith* v. *Industrial Acc. Com., supra,* 44 Cal.2d 364, 367. See *International Harvester Co.* v. *Poff* (Ky.App.) 331 S.W.2d 712.) The artificial distinction drawn between these two cases by the commission, i.e., one method of apportionment is to be used when successive injuries occur to the same anatomical part of the body, but another method if the injuries are to different parts, is unsound. It is not the location of the injury which is important but rather the nature of the disability resulting from the injury. In fact, in *Gardner* the successive injuries did not

[2]It should be noted that there was evidence that the prior disability had improved so that if rated at the time of the second injury would have been only 5 per cent and not 25½ per cent. The sum of the two at that time, therefore, would not have exceeded 100 per cent. The court, however, did not consider this fact material to its decision.

The commission followed the *Pacific Gas* case in *John E. Jones* v. *Fruit Growers Supply Co.,* 25 Cal.Comp. Cases (1960) 159. There three successive injuries were rated as producing disability ratings of 49, 54 and 5¾ per cent respectively. The commission stated, at page 159 of 25 Cal.Comp.Cases, that "If separate and distinct injuries occur, each to a different part of the body, then each must be rated separately. Should a total of more than 100% result from a combination of the separate injuries, no error results. . . ."

occur to the same part of the body; the subsequent injury was to the leg while the prior injury was to the ankle. Of course the disabilities caused by the two injuries were related and overlapped in that use of the left leg was restricted by each.

Attention should be directed to the elements involved in a compensable permanent disability. ▉ A permanent disability is one ". . . which causes impairment of earning capacity, impairment of the normal use of a member, or a competitive handicap in the open labor market." (2 Hanna, Employee Injuries and Workmen's Compensation (1954) p. 255. See Lab. Code, § 4660, subd. (a).) The loss of an eye may in no way impair the employee's earning capacity and yet is compensable as an impairment of the use of a body function and as a possible handicap in the open labor market. (See *Smith* v. *Industrial Acc. Com., supra,* 44 Cal.2d 364, 367.) And when the remaining eye is lost in an industrial accident, the employer is liable not for the resulting combined dis-.ability nor for the difference between the combined disability and the prior disability, but only for the disability attributable to the loss of one eye, assuming that the other was sound. (*Wolski* v. *Industrial Acc. Com.,* 70 Cal.App.2d 427 [161 P.2d 283]. See 2 Hanna, Employee Injuries and Workmen's Compensation (1954) p. 265.) This conclusion results from a proper application of the policy behind section 4750, that is, encouraging the employment of disabled persons. The remainder of the combined disability for which compensation has not been paid by the employer comes from the Subsequent Injuries Fund. (Lab. Code, § 4751. See *Subsequent Injuries Fund* v. *Industrial Acc. Com.,* 44 Cal.2d 604, 609-610 [283 P.2d 1039]; *Subsequent Injuries Fund* v. *Industrial Acc. Com.,* 39 Cal.2d 83 [244 P.2d 889].) ▉ Of course, there must be included in the determination of the disability caused by the second injury, the possibility and cost of rehabilitation. Obviously, where a person receives successive injuries to the same part of the body, or where the two injuries overlap, the possibility and cost of rehabilitation may be more difficult and expensive than it would be in a case where only one injury has been suffered. This, too, is a factor, an important factor, in determining the disability resulting from the second injury.

When there has been no loss of a member of the body or loss of its function, it is necessary as a prerequisite to compensation that the injury result in a decrease in earning capacity or the ability to compete in the open labor market. If a

subsequent injury does not have such an effect it should not be compensable. ▮▮ Stated another way, the disability resulting from a subsequent injury should be compensable only to the extent that it can be said that the employee's earning capacity or ability to compete has been decreased from what it was immediately prior to the second injury. The computation of this figure cannot be determined by a mechanical application of a method of apportionment based upon whether the injury occurs to the same anatomical part of the body. It must come from a consideration of the nature of the disability caused by the injury. ▮▮ If successive injuries produce separate and independent disabilities then each is properly rated separately without concern for the theoretical 100 per cent assigned to "total" disability. (See *Smith* v. *Industrial Acc. Com., supra,* 44 Cal.2d 364, 367.) But if the subsequent injury, even if to a different part of the body, does not alter the earning capacity or ability to compete in the labor market it is not compensable. And if it does alter these factors, it should be compensable only to the extent of the alteration. (See *State Comp. Ins. Fund* v. *Industrial Acc. Com.,* 56 Cal.2d 681, 686 [16 Cal.Rptr. 359, 365 P.2d 415].) Of course, when separate parts of the body are injured, the resulting disabilities will usually be separate and independent and thus fall within the rule of the *Pacific Gas* case. But this is not necessarily true. In the *Gardner* case, the leg amputation did not alter the earning capacity or ability to compete of the employee as a sound person, but did so only to the extent of the difference between an employee with an already impaired left foot and one without the use of the left leg. The two disabilities were not separate and independent. They overlapped. In *Pacific Gas,* on the other hand, the subsequent injury produced a quite independent disability and therefore was properly compensable as if the employee was totally sound at the time of the second injury.

▮▮ In the instant case, Hutchinson, after the first injury, was disabled in that the amount of climbing, overhead work and lifting work he could do had been limited. But the second injury, in a major degree, resulted in the same limitation; a restriction on the amount of heavy work he could do. To the extent that the factors of disability due to both injuries overlapped, that is, to the extent that the second injury did not further reduce his earning capacity nor his ability to compete in the open labor market, he should not be compensated

twice any more than in *Gardner* the loss of the left leg could be considered separately from the fact that the use of the leg was already partially restricted and for which restriction compensation had already been awarded.

*State Comp. Ins. Fund* v. *Industrial Acc. Com., supra,* 56 Cal.2d 681, is illustrative of the point involved. There an employee was suffering from heart insufficiency rated at 43½ per cent permanent disability. He later sustained an industrially connected heart attack which was found to render him 100 per cent disabled. The court said, at page 686 of 56 Cal.2d, that ''The . . . heart attack could not have caused 100 per cent disability since the heart was already 43½ per cent disabled at the time of the . . . attack. It was therefore erroneous for the commission to fail to deduct the earlier 43½ per cent disability . . .'' when assessing the employer's liability for the heart attack. Similarly, in the instant case the second injury could not have caused a full 26 per cent disability manifested by a restriction in the ability to do heavy lifting when that disability was, at least to some extent, already present.

The result of the commission's interpretation of Labor Code section 4750, which was enacted as a limitation upon an employer's liability in order to encourage the employment of disabled persons, would be to increase the liability for a subsequent injury beyond the extent to which that injury resulted in decreased earning power or ability to compete in the open labor market. This would be contrary to the fundamental purpose of the section, because it would require the subsequent injury always to be assessed without regard to the existing condition of the employee. If the prior condition be disregarded the result will be that the employer, or his carrier, will be held liable for a disability greater than was actually produced by the injury.

This court, in a related situation, has previously recognized the distinction between a subsequent injury causing independent disability and one which does not for purposes of determining the applicable method of apportionment. In *Subsequent Injuries Fund* v. *Industrial Acc. Com., supra,* 44 Cal.2d 604, the issue was the method to be used in apportioning liability between the Subsequent Injuries Fund and the insurer of the employer after a subsequent injury. The court said, at pages 608-609 of 44 Cal.2d, ''. . . that in a case such as this (where the latter disability is a product of prior

disease, an industrial injury aggravating the prior disease, and surgical treatment for the condition growing out of the combination of prior disease and industrial injury) the commission . . . [need not] attempt to rate the disability caused by the later industrial injury entirely independently of the prior existing disease and so fix the employer's liability without respect to either the combined disability or the previously existing disability or impairment. Rather, the more reasonable and workable practice . . . appears to be . . . to rate the combined disability . . . and then . . . assign a proportion . . . of the combined disability to the later injury and a correlative proportion to the preexisting disability or impairment. . . . Insofar as concerns a combined disability resulting from a later industrial injury (such as loss of the left eye) when added to a *prior independent disability* (such as loss of the right eye), the method of apportionment advocated by the Fund [substraction of the disability due to the subsequent injury from the combined disability in order to compute the liability of the Subsequent Injuries Fund] appears to be correct.'' (Emphasis added.)

The instant case, although here Labor Code section 4750 and not section 4663[3] is involved, presents a somewhat comparable situation. Here the question is the liability of the employer and not of the Subsequent Injuries Fund. But, of course, there should be a consistent approach since the liability of the Subsequent Injuries Fund is correlated to the liability of the employer. In the case just discussed it was stated that the proper method of computing the liability of the Subsequent Injuries Fund when a later injury adds to a prior independent disability is to subtract from the combined disability that per cent attributable to the subsequent injury when considered alone. This method of computation is entirely consistent with the position taken in this opinion. When the disability caused by the subsequent injury is separate and independent from any prior disability the *Pacific Gas* rule applies, and by rating the second disability separately the necessary figure is obtained to insert into the above formula to compute the liability of the Subsequent

---

[3]Labor Code section 4663 provides, "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury." It is conceded that this section has no application to the instant case.

Injuries Fund. But since this formula will not be the same when the subsequent disability is not independent there is no necessity for applying the *Pacific Gas* rule to obtain the percentage disability due to the subsequent injury. Were section 4663 applicable it appears from the above case that the proper apportionment method then is to determine the combined disability and then assign a proportion thereof to the prior and subsequent disabilities to obtain a percentage disability attributable to each. Here, however, section 4750 applies and for the reasons discussed above this figure should be obtained by applying the method of apportionment used in the *Gardner* case.

It can, of course, be argued that if the injuries sustained in the first accident heal or improve, then there will remain at least a 26 per cent disability caused by the subsequent injury for which no compensation has been paid. This may be so. But this is a factor that should be found as a fact, based on evidence. It was not here found. It is a factor that, upon proper evidence, the commission may consider when it reappraises the existing disability in accordance with the view herein expressed.

The award is annulled, and the case remanded to the Industrial Accident Commission with instructions to determine in accordance with the rules here announced the extent of the permanent disability to Hutchinson caused by the second accident.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Tobriner, J., and White, J.,* concurred.

---

*Retired Justice of the Supreme Court sitting pro tempore under assignment by the Chairman of the Judicial Council.