[Civ. No. 52951. Second Dist., Div. Three. Dec. 27, 1978.]

WILLIAM H. RUMBAUGH, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
PACIFIC WESTERN ENTERPRISES et al., Respondents.

**Counsel**

Silver & McWilliams and Richard L. McWilliams for Petitioner.

Allen, Rhodes & Sobelsohn, Jeffrey M. Wilson, Samuelsen, Whitehead, Benes & Ringwalt and William A. Parsons for Respondents.

## Opinion

**COBEY, Acting P. J.**—Petitioner William Rumbaugh contends that the Workers' Compensation Appeals Board (Board) erred in calculating pursuant to Labor Code section 4658[1] the dollar value of the awards for his two industrial back injuries.[2]

---

[1]Labor Code section 4658 provides in pertinent part:

"If the injury causes permanent disability, the percentage of disability to total disability shall be determined, and the disability payment computed and allowed, according to subdivision (a). However, in no event shall the disability payment allowed be less than the disability payment computed according to subdivision (b).

(a)

| Column 1—Range of percentage of permanent disability incurred: | Column 2—Number of weeks for which two-thirds of average weekly earnings allowed for each 1 percent of permanent disability within percentage range: |
| --- | --- |
| Under 10 | 3 |
| 10-19.75 | 4 |
| 20-29.75 | 5 |
| 30-49.75 | 6 |
| 50-69.75 | 7 |
| 70-99.75 | 8 |

"The number of weeks for which payments shall be allowed set forth in column 2 above based upon the percentage of permanent disability set forth in column 1 above shall be cumulative, and the number of benefit weeks shall increase with the severity of the disability. The following schedule is illustrative of the computation of the number of benefit weeks:

| Column 1—Percentage of permanent disability incurred: | Column 2—Cumulative number of benefit weeks: |
| --- | --- |
| 5 | 15.00 |
| 10 | 30.25 |
| 15 | 50.25 |
| 20 | 70.50 |
| 25 | 95.50 |
| 30 | 120.75 |
| 35 | 150.75 |
| 40 | 180.75 |
| 45 | 210.75 |
| 50 | 241.00 |
| 55 | 276.00 |
| 60 | 311.00 |
| 65 | 346.00 |
| 70 | 381.25 |
| 75 | 421.25 |
| 80 | 461.25 |
| 85 | 501.25 |
| 90 | 541.25 |
| 95 | 581.25 |
| 100 | for life |

". . . . . . . . . . . . . . . . . . . ."

[2]We initially denied the petition for writ of review. Rumbaugh then petitioned the Supreme Court for a hearing. The Supreme Court granted review and transferred the matter to this court with instructions to issue a writ of review.

Since April 1, 1972, section 4658[3] has provided a graduated scale whereunder the number of weekly benefits increases in proportion to the percentage of the permanent disability. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 4 [128 Cal.Rptr. 673, 547 P.2d 449]; *Aten* v. *Workers' Comp. Appeals Bd.* (1977) 75 Cal.App.3d 113, 117 [142 Cal.Rptr. 42].)[4] It should be further noted that pursuant to sections 4658 and 4659 a permanent disability rating of 70 percent or more entitles the injured to a life pension.

## I.

### *Proceedings Before the Appeals Board*

Rumbaugh sustained two industrial back injuries. One occurred while he was employed on December 1, 1974, by Midtown Bowl (Midtown), whose compensation insurance carrier was then Republic Indemnity Company of America (Republic). The second was a cumulative trauma injury to his back while employed by various employers, including Midtown, during the period 1970 through April 18, 1975.[5] On the cumulative trauma injury, pursuant to section 5500.5, subdivision (c), Rumbaugh elected to proceed against Midtown and its carrier Republic.[6]

As a result of the 1974 injury and the cumulative trauma injury Rumbaugh was found to have sustained a total of 76 percent permanent disability, which the workers' compensation judge apportioned 75 percent to the specific 1974 injury and 25 percent to the cumulative trauma injury. Rumbaugh thereby received a permanent disability rating of 57 percent

---

[3]Hereinafter, unless otherwise specified to the contrary, all references will be to the Labor Code.

[4]Section 4658 was subsequently amended by Statutes 1973, chapter 1023, section 6, page 2029. While such amendment applies to Rumbaugh's injuries, it is not directly pertinent to our discussion herein.

[5]Section 5500.5, subdivision (a), as in effect for this cumulative trauma injury involving multiple employers, limited liability to employers during the last five years of employment. (See *Harrison* v. *Workmen's Comp. Appeals Bd.* (1974) 44 Cal.App.3d 197, 199 [118 Cal.Rptr. 508]; *Tidewater Oil Co.* v. *Workers' Comp. Appeals Bd.* (1977) 67 Cal.App.3d 950, 952 [137 Cal.Rptr. 36].)

[6]By subsequent proceedings Midtown and Republic can seek contributions from the other employers within the five-year period of section 5500.5, subdivision (a) as to liability imposed upon Midtown and Republic for the cumulative trauma injury. (§ 5500.5, subd. (c).)

for the 1974 injury, which is equal to 290 weeks of disability payments at $70 per week in the total sum of $20,300; and a rating of 19 percent on the cumulative trauma injury, which is equivalent to 66.25 weeks of permanent disability payments at the rate of $70 per week in the total sum of $4,637.50. The two awards total $24,937.50. No life pension was awarded as to either injury since the permanent disability for neither injury separately was 70 percent or more.

Rumbaugh then sought reconsideration by the Board. He contended that he was entitled to a combined disability rating for the two injuries of 76 percent permanent disability. A 76 percent permanent disability rating would entitle Rumbaugh to an award totalling $30,047.50 payable at $70 per week for 429.25 weeks, and thereafter a life pension of $25.85 per week.

The Board granted reconsideration and analyzed Rumbaugh's position in light of our Supreme Court opinions in *Fuentes, supra,* 16 Cal.3d 1 and *Wilkinson v. Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491 [138 Cal.Rptr. 696]. *Fuentes* and *Wilkinson* both deal with the application of the graduated benefit scale of section 4658.

*Fuentes* involved an injured worker who sustained an industrial injury to his lungs. While his total permanent disability rated at 58 percent, only 33.75 percent of that disability was industrially related. The court applied section 4658 by compensating the industrial disability at the bottom of the graduated scale. The court held that this method was required by section 4750 which states:

"An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment.

"The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

The court in *Fuentes* acknowledged that by their application of section 4658 an injured worker who sustained one injury which resulted in 50 percent permanent disability would receive greater benefits than one who

sustained two successive injuries each of which causes a permanent disability of 25 percent when considered alone.[7] The court viewed this result as "neither unfair nor unjust" but "[r]ather, it is a consequence of the recent amendments to section 4658 and is consistent with the . . . policy [of section 4750] of encouraging employers to hire the disabled." (*Fuentes, supra,* 16 Cal.3d at p. 8.)[8]

In *Wilkinson* the injured sustained two successive bilateral knee injuries while working for the same employer. The two injuries became permanent and stationary[9] at the same time. The appeals board awarded the injured a 15.25 percent permanent disability rating for each injury. The Supreme Court annulled the two separate awards and held that the injured was entitled to a combined permanent disability award of 30.5 percent. The *Wilkinson* court reached that result by following the reasoning of the Board in *Bauer* v. *County of Los Angeles* (1969) 34 Cal. Comp. Cases 594.)

While *Bauer* was decided prior to the adoption of the graduated scale of section 4658, the *Wilkinson* court found it relevant as *Bauer* dealt with the situation where three successive injuries resulted in a combined disability in the life pension range (i.e., 70 percent or more permanent disability) while each injury if considered alone would not have resulted in a life pension. In *Bauer* the Board held that the injured was entitled to a life pension.

As summarized by the Supreme Court in *Wilkinson,* the *Bauer* doctrine provides that "whenever a worker, while working for the same employer,

[7]An award of 50 percent permanent disability at the maximum permanent disability rate (see §§ 4453, 4658) entitles an injured employee to permanent disability payments totalling $16,870 which would be payable at $70 per week for 241 weeks. On the other hand two separate ratings of 25 percent permanent disability, each at the maximum permanent disability rate, would result in two awards each of $6,685 payable at $70 per week for 95.5 weeks. Thus, two separate awards of 25 percent permanent disability each result in an injured receiving a total of $13,370 which is $5,500 less than for a single award of 50 percent permanent disability.

[8]Prior to April 1, 1972, section 4658 provided that an injured employee was entitled to four weeks of compensation for each percentage point of permanent disability which was of industrial origin. (Stats. 1949, ch. 1583, § 1, p. 2833.)

[9]"A disability is considered permanent [and stationary] after the employee has reached maximum [medical] improvement, or his condition has been stationary for a reasonable period of time, as may be determined by the Appeals Board or a referee." (WCAB Rules of Practice and Procedure (Cal. Admin. Code, tit. 8, ch. 4.5, subch. 2, § 10900); see also *Bstandig* v. *Workers' Comp. Appeals Bd.* (1977) 68 Cal.App.3d 988, 995-996 [137 Cal.Rptr. 713].)

sustains successive injuries to the same part of his body and these injuries become permanent at the same time, the worker is entitled to an award based upon the combined disability." (*Wilkinson, supra,* 19 Cal.3d at p. 494.)

The *Wilkinson* court found that *Bauer* was not inconsistent with the requirement of section 4750 that there be apportionment of successive permanent disabilities. The court reasoned that "[i]f the worker incurs successive injuries which become permanent *at the same time,* neither permanent disability is 'previous' to the other, and section 4750 hence does not require apportionment." (*Wilkinson, supra,* 19 Cal.3d at p. 497; italics in original.)

The *Wilkinson* opinion then goes on to explain that "*Bauer* also serves the practical purpose of avoiding the necessity to apportion disability in a class of cases in which, because of the nature and timing of the injuries, any apportionment is likely to be unsupported by substantial evidence." (*Id.,* at p. 497; *Aten, supra,* 75 Cal.App.3d 113, 118-119.)

In *Wilkinson,* the court was careful to note that it was not overruling *Fuentes* but rather that it was distinguishing it based upon *Bauer.* (*Wilkinson, supra,* 19 Cal.3d 491, 500-501.)

In reviewing Rumbaugh's two injuries, the Board noted that one element of the *Wilkinson-Bauer* doctrine was not present—the employers for the cumulative trauma and the 1974 injury were not the same. Accordingly, the Board refused to apply *Wilkinson-Bauer* and affirmed the trial judge's separate awards.[10]

---

[10]Rumbaugh's petition for reconsideration was originally assigned pursuant to section 115 to Commissioners Pickard, Costamagna and Gaines, who unanimously granted reconsideration pending the Supreme Court's decision in *Wilkinson.* At the time the Board issued its decision on the merits of the petition, however, Commissioner Pickard was no longer a member of the Board, since she had been appointed to the Los Angeles Superior Court during the interim. The merits of the matter were decided by Commissioners Costamagna and Gaines. (See § 115; see also *Graves* v. *Commission on Professional Competence* (1976) 63 Cal.App.3d 970, 976, fn. 3 [134 Cal.Rptr. 71].) Commissioner Gaines reluctantly concurred with Commissioner Costamagna's opinion, stating: "I concur that the *Wilkinson* principle is not applicable herein based upon the elements as set forth by the Supreme Court. However, I do so with some reluctance because I see no logical or legal basis for not applying *Wilkinson* in cumulative injuries involving multiple employers, but applying it if there is only a single employer in the cumulative injury. The result of successive injuries to the applicant is the same whether the cumulative injury involved a single employer or multiple employers."

## II.

### *Discussion*

■ *Wilkinson* spells out the three requirements for the application of the *Bauer* doctrine to cases coming under the progressive schedule of section 4658. They are:

1. The successive injuries must be sustained in the employ of the same employer;

2. The successive injuries must involve the same parts of the body; and

3. The successive injuries must become permanent and stationary at the same time.

Here, both of Rumbaugh's injuries involve back disability and both injuries became permanent and stationary at the same time. The missing element under *Wilkinson* is that the injuries here did not occur while working for the same employer; rather, while one of the employers in the cumulative trauma claim, Midtown, was the same employer for the 1974 specific injury, there are other employers for the cumulative trauma injury.

The issue then is whether the *Bauer-Wilkinson* doctrine may be applied where there is not an identity of employers at the times of the successive injuries.

In *Wilkinson,* at pages 500-501, the court, in rejecting the contention that applying *Bauer* conflicted with the state policy of encouraging employers to hire and retain handicapped persons, stated: "The *Bauer* doctrine as presently limited only applies to cases in which both injuries were sustained in the course of employment by the same employer and thus would not discourage hiring of previously injured persons. And since that doctrine applies only in the rare circumstance that an employee sustains a second injury to the same part of his body before the first injury has become permanent, we cannot see how *Bauer* would induce employers to discharge injured workers."

Seemingly, this language limits *Wilkinson* to the very "rare" factual situation presented there and in *Bauer*. We observe, however, that since at the time *Wilkinson* was decided *Bauer* had not been applied to a factual situation like the one before us,[11] our Supreme Court had no reason to consider such a situation. Thus, we must decide whether the legal analysis of *Wilkinson* should apply here.

The two cornerstones of *Wilkinson* and *Bauer* are the concepts that (1) under section 4750 there is no preexisting disability where both injuries become permanent and stationary at the same time; and (2) the use of *Wilkinson* and *Bauer* avoids the "artificial" apportionment between two injuries where because of the closeness in time it is relatively difficult to determine if all the disability or only part is due to one or the other injury.

As to Rumbaugh's injuries these two concepts are equally applicable. Both injuries became permanent and stationary at the same time; therefore, there was no pre-existing disability as to either injury. If section 4750 does not prevent the result in *Wilkinson,* we do not see why it should preclude the application of *Wilkinson* here merely because there is not complete identity of employers for both injuries. The policy behind section 4750 is to encourage employers to hire and to retain previously disabled workers. (See *Wilkinson, supra,* 19 Cal.3d at p. 500; *Fuentes, supra,* 16 Cal.3d at p. 6.) Nothing in the language of section 4750 indicates that the section applies differently where the successive injuries occur while working for the same employer as opposed to different employers. Indeed, no such distinction has been made in the cases applying section 4750 to successive injuries. (See, e.g., *Mercier* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 711 [129 Cal.Rptr. 161, 548 P.2d 361]; *State Comp. Ins. Fund* v. *Ind. Acc. Com. (Hutchinson)* (1963) 59 Cal.2d 45 [27 Cal.Rptr. 702, 377 P.2d 902]; *State Comp. Ins. Fund* v. *Workers' Comp. Appeals Bd. (Gaba)* (1977) 72 Cal.App.3d 13 [139 Cal.Rptr. 802]; *Amico* v. *Workmen's Comp. Appeals Bd.* (1974) 43 Cal.App.3d 592 [117 Cal.Rptr. 831]; *National Auto & Cas. Ins. Co.* v. *Industrial Acc. Com.* (1963) 216 Cal.App.2d 204 [30 Cal.Rptr. 685]; but

[11]An interesting case in the application of *Bauer* is the appeals board decision in *Industrial Indemnity* v. *Workmen's Comp. App. Bd. (Soliz)* (1970) 35 Cal. Comp. Cases 614. In *Soliz* the injured had two industrial injuries while working for the same employer; however, for each injury there was a different industrial insurance carrier. The Board in *Soliz* applied *Bauer* and awarded the injured a life pension. *Soliz* was cited with apparent approval in *Wilkinson.* (*Id.,* at p. 497.)

see *Wilkinson, supra,* 19 Cal.3d at p. 504 (conc. and dis. opn. of Richardson, J.).)

In *Wilkinson* the two injuries were separated by two and one-half months. Rumbaugh's specific injury occurred toward the end of the five-year period of the cumulative trauma injury. It seems clear, though, that the two injuries interacted. Thus, it would be unrealistic to conclude that as to Rumbaugh's back injuries the disability specifically attributable to each is possible of separate determination. In addition, where, as here, a specific injury allegedly occurs during the period of a cumulative trauma injury, the application of *Wilkinson* eliminates the effect of the often dubious finding of a specific injury when that specific injury appears as nothing more than a part of the cumulative trauma injury.[12] We also observe that the situation of multiple employers of a cumulative injury will become rarer in the future as commencing January 1, 1978, there will occur under section 5500.5, subdivision (a) (see fns. 5 and 6, *ante*) a yearly reduction of the five-year liability period for cumulative trauma injuries. For claims filed or asserted on or after January 1, 1981, the liability period for cumulative trauma injuries will be only one year.

Thus, the fact that multiple employers are involved in the cumulative trauma injury and only Midtown is involved in the 1974 specific injury does not affect the two "cornerstones" of *Wilkinson* and *Bauer.* To fail to apply *Wilkinson* and *Bauer* to Rumbaugh's injuries would treat him differently than injureds who are similarly situated except that they are "fortunate" enough to have complete identity of employers for the two injuries. This difference in treatment must necessarily be based upon a factor which is clearly irrelevant under *Wilkinson-Bauer* and would be contrary to the policy of liberal construction, expressly stated in section 3202, which mandates that the Workers' Compensation Act "shall be liberally construed by the courts with the purpose of extending benefits for the protection of persons injured in the course of their employment."

---

[12]The parties stipulated before the trial judge that a specific injury occurred on December 12, 1974. This stipulation was accepted by the judge, and he made a finding of fact to that effect. (See § 5702.) No party now challenges this finding and we may not disturb it. We do observe, however, that at the time of the specific injury, Rumbaugh was putting away 12 ounce bottles of beer, bottle by bottle, an activity he did every day of his employment. Certainly had the appeals board found that no specific injury occurred on December 12, 1974, but that events of that day were merely part of the cumulative trauma injury it would have been supported by "substantial evidence." (See *Aetna Cas. & Surety Co.* v. *Workmen's Comp. Appeals Bd. (Coltharp)* (1973) 35 Cal.App.3d 329, 340-341 [110 Cal.Rptr. 780].)

(See *Lundberg* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 436, 439 [71 Cal.Rptr. 684, 445 P.2d 300]; *Hulbert* v. *Workmen's Comp. Appeals Bd.* (1975) 47 Cal.App.3d 634, 639 [121 Cal.Rptr. 239].) The amount of compensation in this kind of successive injuries case should depend upon the severity of the disability and not upon the fortuitous circumstance of identity of employers.

Nothing in sections 3208.1,[13] 3208.2,[14] and 5303,[15] which proscribe the merger of specific and cumulative trauma injuries (*Aetna Cas. & Surety Co.* v. *Workmen's Comp. Appeals Bd. (Coltharp), supra,* 35 Cal.App.3d 329, 334; *State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd. (Burris)* (1969) 1 Cal.App.3d 812, 817-818 [82 Cal.Rptr. 102]), prevents the application of *Wilkinson* to Rumbaugh's claims. Nothing in these sections "suggests that the Legislature intended to require apportionment in ordinary disability cases which do not fall within the scope of section 4750 *or* that it intended to overturn the *Bauer* doctrine that a case involving successive injuries to the same part of the body which became permanent and stationary at the same time does not fall within the scope of section 4750." (*Wilkinson, supra,* 19 Cal.3d at p. 501, fn. 5; italics added.)

Accordingly, we hold that the Board should have followed *Wilkinson-Bauer* in computing the dollar amount of benefits and awarded Rumbaugh a combined permanent disability rating of 76 percent.

[13]Section 3208.1 provides: "An injury may be either: (a) 'specific,' occurring as the result of one incident or exposure which causes disability or need for medical treatment; or (b) 'cumulative,' occurring as repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment. The date of a cumulative injury shall be the date determined under Section 5412."

[14]Section 3208.2 provides: "When disability, need for medical treatment, or death results from the combined effects of two or more injuries, either specific, cumulative, or both, all questions of fact and law shall be separately determined with respect to each such injury, including, but not limited to, the apportionment between such injuries of liability for disability benefits, the cost of medical treatment, and any death benefit."

[15]Section 5303 provides: "There is but one cause of action for each injury coming within the provisions of this division. All claims brought for medical expense, disability payments, death benefits, burial expense, liens, or any other matter arising out of such injury may, in the discretion of the appeals board, be joined in the same proceeding at any time; provided, however, that no injury, whether specific or cumulative, shall, for any purpose whatsoever, merge into or form a part of another injury; nor shall any award based on a cumulative injury include disability caused by any specific injury or by any other cumulative injury causing or contributing to the existing disability, need for medical treatment or death."

## III.

### *Disposition*

Accordingly, the awards and the Board's opinion and decision after reconsideration are annulled. The cause is remanded to the Board for such further proceedings as are indicated and consistent with the views expressed herein.

Allport, J., and Potter, J., concurred.