16655

HOPPER v. FIRESTONE STORES *ET AL.*
(72 S. E. (2d) 71)

*Messrs. J. Claude Fort,* of Gaffney, and *Carlisle, Brown & Carlisle,* of Spartanburg, *for Appellant, Charles Hopper,*

*Messrs. J. Claude Fort,* of Gaffney, and *Carlisle, Brown & Carlisle,* of Spartanburg, *for Respondent, Charles Hopper,*

*Mr. Thos. B. Butler,* of Spartanburg, *for Defendants-Appellants-Respondents,*

Aug. 5, 1952.

BAKER, Chief Justice.

This is an appeal from an order of Honorable Bruce Little-john, Resident Circuit Judge of the Seventh Circuit, revers-ing an award by the South Carolina Industrial Commission, and remanding this cause to that Commission to determine whether any further temporary total disability compensation is payable, and when the claimant reached maximum im-provement; to make an award for serious bodily disfigure-ment; and to make an award for permanent disability on account of the loss of an additional portion of a leg.

Some fifteen years before November 3, 1947, claimant was involved in a motorcycle accident (not connected with any employment by the defendant, Firestone Stores), as a result of which his right leg was amputated above the knee. He had acquired, and was wearing an artificial member. On November 3, 1947, and for about four years prior thereto, claimant was and had been employed by the defendant, Fire-stone Stores, at its Spartanburg garage. Defendant, Liberty Mutual Insurance Company, is the statutory Insurance Car-rier for the defendant-employer under the Compensation Act.

We will refer to the parties to this action according to their designations before the Commission and the Circuit Court, that is, as claimant, and as defendants-employer and insurance carrier.

On November 3, 1947, the claimant suffered an injury by accident arising out of and in the course of his employ-ment, to the stump of his right leg, as a result of which it became necessary to amputate about four inches of the re-maining stump. He has been paid certain temporary total

disability payments, been furnished with certain medical, surgical and hospital care and with another artificial limb, held in adjustment in a manner different from that of his former artificial limb, all by the defendant insurance carrier.

Disputes existing between the parties, the case was heard before John H. Dukes, member of the South Carolina Industrial Commission as Hearing Commissioner, hearings being held at Spartanburg on November 23, 1948, and at Gaffney on June 13, 1949, and December 15, 1949, at which hearings certain proceedings were had and evidence taken. Claimant was employed by Willauer Paper Box Company on December 15, 1949, and had been prior thereto since April 5, 1949.

Based on the testimony so taken, Commissioner Dukes on August 31, 1950, issued his opinion and award denying claimant's claims for specific loss and serious bodily disfigurement; but directing payment of additional compensation for temporary total disability that came about in this manner. Claimant had been furnished a new artificial member following his injury as aforesaid, which was not comfortable or fitted satisfactorily, and J. E. Hangar Company, the company which manufactured, prepared and furnished said leg, obtained same from claimant on or about February 15, 1949, and retained it for a period of 5.6 weeks, that is to say, until March 25, 1949, for the purpose of making adjustments thereto in order to better fit the limb for claimant's use, all with the result that claimant was unable during said period to pursue his normal course of activities, and during which time, on account of the missing artificial limb, he was totally incapacitated, or under the Workmen's Compensation Act, temporarily totally disabled. There is no issue as to temporary total disability for this period, the contest being as to whether claimant has received all of the temporary total compensation to which he is entitled, exclusive of this period.

On appeal to the Full Commission, the finding of facts and conclusions of law of the Hearing Commissioner were

sustained in their entirety, and the award of the Hearing Commissioner filed on August 31, 1950, was affirmed by the Full Commission and adopted as its opinion and award.

There is no issue in this case as to when the claimant attained maximum improvement. The date thereof, March 15, 1949, is recognized by all parties to the action, and particularly by the claimant's counsel, in their Exception 1 on their application for review by the Full Commission from the award of the Hearing Commissioner, and in their Exception 1 on appeal from the award of the Full Commission to the Circuit Court, although in this last exception, the word "minimum" has, apparently through error, been substituted for the word "maximum". However, we do not find in the record any testimony to support the holding of the Hearing Commissioner affirmed by the Full Commission that the Claimant had been *paid in full* all amounts due him for temporary total disability. There is no finding as to the length of time claimant was temporarily totally disabled, nor a finding as to the amount he has been paid. From the scant testimony in the record on this feature of the case, it appears that claimant was temporarily totally disabled, with the exception of six or seven weeks beginning soon after the date of his injury, November 3, 1947, until March 15, 1949, the date on which he reached maximum improvement, and that he was paid at most $1,161.29, which would still leave a balance due him. Claimant denies having received more than $992.00. The record does not show definitely the length of time claimant was temporarily totally disabled, as aforestated, but whatever that time was he was entitled to receive $25.00 weekly. The case should therefore be remanded to the lower court and by that court remanded to the Industrial Commission to take further testimony and make its finding based thereon, whether the claimant has been paid in full, and if not, then the balance due him for temporary total disability. The factual finding of the Commission that claimant has been paid in full for all temporary total disability, ordinarily conclusive and binding on this

court, being unsupported by any competent evidence, must be reversed, as such findings cannot rest on conjecture, surmise or insufficient evidence. See Cases, 19 S. C. Digest Workmen's Compensation, Key Nos. 1938, 1939. The exceptions of the defendants-appellants relative thereto, are, therefore, overruled.

Practically all of the testimony in the record serving to prove serious bodily disfigurement as a result of the accident suffered by claimant on November 3, 1947, comes from claimant's father, W. A. Hopper, and another witness, D. M. Floyd. The testimony of the latter is to the effect that prior to said accident, although the claimant had an artificial leg, "he used it extra well", and "walked with very little limp, and seeing him on the street passing by, you wouldn't know he had an artificial leg. He travelled extra well with the artificial leg and with very little limp"; that there is a difference now and the way he walked before, and that claimant doesn't walk as well now as before the November, 1947, accident; that he doesn't believe that the claimant can now do the same kind and amount of work; that seeing claimant in a shoe store buying shoes, it was obvious that he had an artificial limb. The testimony of W. A. Hopper was to the effect that claimant was good help in the house moving business when he had his artificial leg prior to November 3, 1947, after learning to use it, which took him about one year; that claimant doesn't now walk as well as he did with his former artificial leg for the reason that he hasn't the leverage on this leg that he had on the other one.

The Hearing Commissioner, at the hearing held on June 13, 1949, after viewing the claimant, entered the following in the record: 'He walks very unnatural and with a decided limp and appears like a man with his leg three or four inches shorter. And he throws his artificial member three or four inches to the right of a normal step." During the examination of claimant at this hearing, he having been recalled as a witness in his own behalf, testified that he did not walk as well as before as far as appearance goes; and when asked to

describe the difference, replied: "It is more noticeable and swings out instead of swinging straight." At this point counsel for defendants objected on the ground that this was "a matter for someone else to testify as to whether his gait is what it used to be, as far as the appearance and gait." In ruling on this objection, the Hearing Commissioner stated: "I think you are right. I think he can testify to it but I don't see where it would carry any weight. I think someone else would have to testify as to his gait or manner of walking. I mean it would have to be substantiated by someone else. Frankly, I think from my observation of him and the way he walks now, I would take into consideration that he walked normal before, unless it was shown otherwise."

The testimony of the witnesses, Floyd and W. A. Hopper, was taken after the foregoing statement of the Hearing Commissioner, and his description of the appearance of claimant as contained in the record, and there was no rebuttal testimony. Nor was there any other testimony as to the manner in which claimant walked, and concerning his appearance prior to the date of his injury on November 3, 1947.

However, there was yet another hearing on December 15, 1949, at which, we assume, the Hearing Commissioner had the opportunity of further observing the claimant. He was then employed in a gainful occupation, and had been since April 5, 1949. The record discloses that it required a period of approximately one year for claimant to become thoroughly accustomed to the use of his first artificial limb; and it is reasonable to asume that the same length of time was required for him to acquire the full use and benefit from the second artificial limb. At the June, 1949, hearing claimant testified that he then had a good fit, and that shrinkage in the stump had taken place, but that he couldn't handle it as well as the other (referring to the other artificial limb he had prior to his accident on November 3, 1947). What the improvement was in the appearance and gait of the claimant at the December 15, 1949, hearing is not reflected by the record, other than the holding by the Hearing Commissioner

(concurred in by the Full Commission) that claimant was not entitled to an award for serious bodily disfigurement, that is, that there was no compensable disfigurement by reason of the last amputation of an additional four inches of the stump—"that the claimant has no serious bodily disfigurement in excess of that which existed prior to his injury on November 3, 1947, while in the employ of Firestone Stores." This was the finding of fact thereabout by the Hearing Commissioner and concurred in by the Full Commission, and as is stated in the majority opinion in *Murdaugh v. Robert Lee Construction Co.,* 185 S. C. 497, 504, 194 S. E. 447, 451 : "If the full commission has found as a fact that the disfigurement suffered by the respondent (claimant) is not such serious disfigurement as is contemplated by the terms of the Act, then that finding is final, and this court is bound by it." Further quoting from the prevailing opinion in the *Murdaugh case*s "In the case of facial or head disfigurement it is mandatory that the commission give compensation. In the case of bodily disfigurement other than to the face or head, the commission is given discretion to award compensation." Further quoting therefrom : "* * * this disposes of the cardinal issues of this appeal. The appeal turns upon the question whether this court may review the finding of fact by the commission that the respondent has not suffered such bodily disfigurement as would entitle him to an award of compensation therefor. The action of the commission thereabout is declared by the Act to be final. The discretion so to determine is vested by the legislative body in the commission, and the courts are denied the power to interfere therewith".

The making of an award to a claimaint for serious bodily disfigurement being discretionary with the Commission, and the Commission having found as a fact "that the claimant has no serious bodily disfigurement in excess of that which existed prior to his injury on November 3, 1947, while in the employ of Firestone Stores," we know of no power resting in either the Circuit Court or

this Court to compel the Commission to make such an award. Therefore, the exceptions of the defendants to the order of the Circuit Judge on this issue are sustained.

As has been above noted, the Hearing Commissioner failed to allow claimant anything by way of permanent disability and in so doing, held that since claimant's pre-existing injury had caused the loss of his entire right leg as contemplated by the South Carolina Workmen's Compensation Act and was non-existent, in so far as the specific loss provisions are concerned, he was not entitled to an award for permanent disability, it having been determined by said Commissioner that there was no general disability in excess of that which claimant had prior to the compensable accident. This finding was affirmed on hearing before the Full Commission, but upon appeal to the Court of Common Pleas, Judge Littlejohn reversed both the Full Commission and the Hearing Commissioner, stating that Section 7035-36 (33) of the 1942 Code of Laws, as amended, established the rule applicable for determining the extent of the partial loss in this case. His order thereon states: "Consequently, in the present case the Commission must find any partial loss which resulted from the accident of November 3, 1947, bearing in mind that loss of use may be compensable, as well as physical loss. In order to determine such partial loss the Commission must find any permanent disability which existed when the employee entered the employment of the defendant and any permanent disability which existed when the employee reached maximum improvement following his compensable injury. Any increase of the latter over the former would be the partial loss which resulted from the compensable injury." In accordance with this finding the lower court returned the cause to the Commission to determine the degree of disability in the above prescribed manner.

The question comes now before us upon exceptions by the defendants-appellants which assert error in the lower court's holding that claimant was entitled to an award for permanent disability where the record showed

that claimant had at the time of his injury a non-existent leg from the standpoint of the Compensation Act, that is to say, that claimant having lost 100% of his leg prior to the injury of November 3, 1947, there was no basis upon which an award for permanent disability or specific loss could be computed. The claimant in his exceptions takes the position that Section 7035-36(33) of the Compensation Act provides that for the purposes of determining disability as a result of the November 3, 1947, injury, Claimant must be considered as having had prior to said injury an unimpaired leg.

The question, therefore, resolves itself into a determination of whether claimant, who, as found by the Commission has a pre-existing total loss of a right leg, sustains a subsequent injury which occasions additional amputation thereto is entitled to be compensated as if he were previously unimpaired, or whether he is to be denied compensation upon the grounds that having lost his entire leg, there is no percentage upon which compensation can be computed.

Section 7035-36(33), *supra,* reads as follows:

"If an employee has a permanent disability or has sustained a permanent injury in service in the army or navy of the United States, or in another employment other than that in which he received a subsequent permanent injury by accident, such as specified in § 7035-34(31), he shall be entitled to compensation only for the degree of disability which would have resulted from the later accident if the earlier disability or injury had not existed."

Section 7035-34(31)(p) provides the compensation for a leg at 60% of the average weekly wages during 175 weeks, and Sub-section (t) thereof reads as follows:

"Total loss of use of a member or loss of vision of an eye shall be considered as equivalent to the loss of such member or eye. The compensation for partial loss of or for partial loss of use of a member or for partial loss of vision of an eye shall be such proportion of the payments above provided for total loss as such partial loss bears to total loss. Loss of

both arms, hands, legs, or vision in both eyes shall be deemed permanent total disability, and shall be compensated under § 7035-32 (29)."

An examination of the entire record in this case in the light of the above referred to statutory enactments leads us to no other conclusion than that the Legislature intended that the compensation here, if there is to be such, must be based only upon the extent to which the loss or loss of use existing after the last injury exceeds that which existed prior thereto, and, claimant having sustained the entire loss, or loss of use of his right leg in his prior injury, his claim for further injury to this same leg must be denied. A situation analogous to this came before us in· *Schwartz v. Mt. Vernon-Woodberry Mills,* 206 S. C. 227, 32 S. E. (2d) 517. There it was held that where one having vision in a previously impaired eye of 20/200 vision sustained 50% loss of the vision in said eye, he was entitled only to a 10% permanent disability therein, being one-half of the 20/200 vision, rather than to 50% of the loss of an eye of normal vision. In our opinion, the correctness of this decision is demonstrated by a close scrutiny of Section 33, above quoted, in the light of Section 31 and the remaining. portions of the Act. Had the Legislature not intended to limit recovery for a second injury, this section would be superfluous. The use of the words, "only for the degree of disability which would have resulted from the later accident if the earlier disability or injury had not existed", when taken with the entire context of the Act. clearly evidences legislative intent to prevent double compensation. If it had not been so intended, then this statute would have no purpose. This section has as its purpose to make an exception in the case of employees comprising that class which has sustained injury at a time when they have previously had a disability and the word "only" prevents compensation beyond the extent to which the second injury exceeds the first or prior one.

Aside from the deliberations in the *Schwartz case, supra,* this Court has not heretofore considered such a question as

is here presented. The case upon which the defendants-appellants principally rely, *American Mutual Liability Insurance Co. v. Brock*, 165 Ga. 771, 142 S. E. 101, involves the interpretation of the Georgia statute, which is for the purposes of determining this question, comparable to the South Carolina Act. There the employee had previously sustained an injury resulting in 85% loss of use of a leg and the Commission had determined that he had in the accident under consideration sustained a 50% loss of use of the remaining portion of the leg. Section 34 of the Georgia Workmen's Compensation Act, Ga. L. 1920, p. 167, provided:

"That if an employee who suffers an injury in his employment has a permanent disability or has sustained a permanent injury, such as specified in Section 32, suffered elsewhere, he shall be entitled to compensation only for the degree of incapacity which would have resulted from the later accident if the early disability or injury had not existed."

Reversing the holdings of the lower courts, the Court in a most lucid and poignant opinion written by Mr. Chief Justice Russell, held that regardless of whether the Legislature was correct in so doing, it had evidenced an intent by the provision to place those employees who had suffered the previous loss of a portion of a leg in a different class from those who had sustained no such previous loss, and that said section removed them or excepted them from the general class of employees with normal limbs. In so deciding, it was stated, 142 S. E. on page 104:

"However, it is our opinion that the use of the word 'only' indicates that it was the purpose of the Legislature to protect employers against liability to compensate an employee who had been previously injured, and not the intention of the General Assembly by the enactment of section 34 to provide a means by which an employee who had been injured at some time previous might collect compensation just as if he had never been injured or a previous disability had never existed, and thereby receive compensation just as if the prior injury had never been sustained."

An analysis of the decision in *Knoxville Knitting Mills Co. v. Galyon,* 148 Tenn. 228, 255 S. W. 41, 30 A. L. R. 976, cited by claimant, reveals that the statute there under consideration is not comparable to that passed by our Legislature, but, on the contrary, the Tennessee Act unequivocally expresses an intention that compensation for a subsequent injury shall not be reduced by any consideration of an earlier injury. The great contrariety of the decisions over the country upon this question appears to be based principally upon the construction of the applicable act being applied to the factual situation. Here we have a prior 100% loss of claimant's right leg, it having been amputated above the knee.

The statute in Virginia appears to be almost identical to ours and the leading case thereunder is *Noblin v. Randolph Corporation,* 180 Va. 345, 23 S. E. (2d) 209, involving an employee who had lost the sight of one eye in childhood and then lost the sight of the remaining eye in the accident under consideration. There, the Court calling attention to the diversified language of the controlling statutes, refused to allow the employee compensation for total permanent disability and limited his recovery to that for the loss of the remaining eye.

The claimant here, who had lost his right leg prior to the accident in which he has again been injured, will doubtless be penalized by the interpretation which we have found we must place upon our statute, for since the Commission, upon evidence which we deem to be sufficient in the light of our limited right of inquiry therein, has found no general disability exceeding that which existed prior to the date of this accident, we must deny him any recovery for permanent disability, loss or loss of use. However, unfortunate though it may be, claimant finds himself but one among an army of persons composing that class which has become generally known as the "Physically Handicapped." Untold hours and resources have been expended with a purpose of creating, obtaining and maintaining employment or re-employment

for this class. Suffice it to say that the members of this class though faced with a grim reality in many instances must seek employment upon a premise of their acceptance just as each in his situation might be, and must obtain employment or become public charges. Doubtless it was this fact of which the General Assembly was conscious when it passed this statute which imposes a hardship upon claimant, but which, in our opinion, is for the common good of the handicapped generally.

The order of the Circuit Court in this regard is, therefore, reversed and the award of the Hearing Commissioner and of the Full Commission affirmed, for the reasons aforestated.

The foregoing disposes of all of the issues presented by the exceptions of both the defendants-appellants and the claimant as an appellant.

Let this cause therefore be remanded to the Circuit Court and by it to the Industrial Commission for further proceedings solely upon the question of temporary total disability hereinabove directed.

Affirmed in part. Reversed in part.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.