584 S.E.2d 390

**Marshall EADDY, Respondent,**

v.

**SMURFIT–STONE CONTAINER CORPORATION,
Self–Insured Employer, Appellant.**

No. 3643.

Court of Appeals of South Carolina.

Submitted April 7, 2003.

Decided May 27, 2003.

Rehearing Denied Aug. 21, 2003.

---

1. Because we affirm the trial court, it is not necessary to address the residents' adverse possession claim.

Grady L. Beard and Marcy J. Lamar, of Columbia, for Appellant.

Steve Wukela, Jr., of Florence, for Respondent.

HUFF, J.:

In this workers' compensation action, Smurfit–Stone Container Corporation (Smurfit–Stone) appeals the trial court's order affirming the order of the South Carolina Workers' Compensation Commission (Commission) awarding medical expenses and workers' compensation benefits to Marshall Eaddy. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Eaddy began working at Smurfit–Stone in the mid–1960s. He primarily worked as a general mechanic, which involved strenuous physical labor at times. Prior to joining Smurfit–Stone, Eaddy spent one year as a student at Clemson University followed by one year of service in the Air Force and one year as a bank teller.

Eaddy testified that while working a 7:00 p.m. to 7:00 a.m. shift at Smurfit–Stone on July 19 to 20, 1999, he was working on a wood chipper when he felt sharp pains. He stated the incident occurred about 12:00 or 1:00 in the morning while he was using a twenty-five to thirty pound impact wrench, helping to change out the segment on the chipper. Eaddy initially attributed the pain to gas and told his co-worker he was going to First Aid. There, a nurse gave Eaddy Alka–Seltzers, which Eaddy took. He sat down for awhile, but subsequently returned to work. Through the course of his shift, Eaddy's pain worsened and he complained to another co-worker. Around 7:00 a.m., Eaddy reported to his maintenance foreman that he was in pain stating, "I believe my guts is coming out." His supervisor told him to report to the First Aid office again and fill out a report. After doing so, Eaddy returned to his home.

Once Eaddy arrived home, he took some old pain medication and slept until the following morning. When he awoke he was still experiencing pain, so he contacted the nurse at Smurfit–Stone, who thereafter instructed him to go to the emergency room at Carolinas Hospital System in Florence. At the hospital, Eaddy complained of abdominal pain, abdominal distention, nausea, and vomiting. Dr. David Anderson saw Eaddy on July 21, 1999, and determined Eaddy had a bowel obstruction secondary to a recurrent ventral hernia.

During the course of his employment at Smurfit–Stone and prior to the present incident, Eaddy underwent four hernia operations, all performed by Dr. Reginald S. Bolick. The first operation occurred on October 26, 1987, to treat an umbilical hernia. Surgery for a second umbilical hernia took place on November 21, 1988. Dr. Bolick saw Eaddy again in December 1992 for treatment of a ventral hernia in a different location that was in his midline section above his umbilicus. He performed surgery on Eaddy on January 4, 1993 to repair this hernia, and operated on him again on January 12, 1993 when he developed a recurrence of this hernia after an episode of severe post-operative coughing.

Dr. Bolick testified, although he referred to Eaddy's third hernia as a "recurrent hernia" in his December 1992 notes, he considered this a misnomer, noting that this hernia was actually above the location of the previous umbilical hernia repair.

Additionally, Dr. Bolick testified that there is some degree of inherent weakness of the tissue after one has a hernia, and given Eaddy's susceptibility to hernias, the natural progression of his condition would be to develop another one. However, he did not consider Eaddy disabled and Eaddy had no permanent impairment at that time. Dr. Bolick further stated, when he last saw Eaddy in May 1993, his repair was sound, and he discharged Eaddy from his office, releasing him to full activity. Eaddy received treatment, as well as temporary total workers' compensation benefits, for each of these hernias.

Dr. Anderson testified that he documented in his initial consultation on July 21, 1999 that Eaddy reported he was working at Smurfit–Stone the day before when "he went to lift something, he felt a pull in his abdomen and afterwards felt abdominal pain." On July 22, 1999, Dr. Anderson operated on Eaddy to repair the ventral hernia and resect a portion of incarcerated bowel. When discussing his initial assessment of Eaddy's condition as a "recurrent ventral hernia," Dr. Anderson stated, "Well, it means that he's had more than one and that it has returned" and because it was his fifth repair, it was a recurrent hernia. However, he further testified that the repairs were not always in the same location.

According to Dr. Anderson, he could not state how long the hernia had existed prior to the surgery, but "the intestines had been out in the hernia sac for at least twenty-four hours" at the time of surgery, and his intestines most likely became incarcerated and trapped when Eaddy lifted the object at work, leading to the onset of pain. Concerning the impact of Eaddy's job on his health, Dr. Anderson testified that it had been "a big problem, in that . . . he does a tremendous amount of physical work and in doing that, he's putting a tremendous amount of stress on the incisions and that this, in part, has led to why he's had to have so many hernia repairs." He further opined that if Eaddy continued to go about his work activities, "he's going to develop a recurrent hernia, and each time that we do this it's almost like playing Russian Roulette." He testified Eaddy could, at most, do "sedentary type work," but that any kind of physical work at all, including a "simple task in the yard," would mean Eaddy was "taking his health into severe risks."

Eaddy's co-worker, Russell Suggs, confirmed that Eaddy complained to him that he was sick and needed to go to First Aid on the night in question. He stated Eaddy was "feeling his stomach" and that "it seemed like that's where he was hurting." Eaddy's maintenance superintendent, Jimmy Burroughs, testified that on the date of Eaddy's alleged accident, Eaddy came to the office and told him and the foreman "that he had pulled something loose or pulled the hernia loose again."

Eaddy testified that from 1993, when he had his fourth hernia surgery, up until July 20, 1999, he had not felt any tearing feelings nor had any trouble with pain in his abdomen. His co-worker Harold Clay verified that from 1993 to 1999, Eaddy never complained to him about having any problems with his stomach.

Although Eaddy agreed that he had not made any attempts to return to employment, he testified he did not know of any kind of work for which he was qualified that he was capable of performing. Eaddy was fifty-eight years old at the time of the hearing before the single commissioner in May 2000.

In October 1999, Eaddy sought permanent disability workers' compensation benefits for his hernia. Smurfit–Stone denied his claim. In an August 2000 order, the single commissioner found (1) Eaddy sustained an injury resulting in a hernia or rupture on July 20, 1999; (2) the hernia or rupture appeared suddenly; (3) the hernia or rupture was accompanied by pain; (4) the hernia or rupture immediately followed an accident; (5) the hernia or rupture did not exist prior to the accident for which compensation is claimed; (6) Eaddy sustained an accident arising out of and in the course of his employment at Smurfit–Stone; (7) Eaddy is entitled to all medical, surgical, hospital, and other required treatments for the hernia; (8) Eaddy is totally and permanently disabled, and entitled to a permanent award of workers' compensation; and (9) because of Eaddy's total and permanent disability, he is entitled to have all resulting and necessary nursing services, medicines, prosthetic devices, sick travel, medical, hospital and other treatment or care be paid during Eaddy's life, without any regard to any limitation in the Act, including the maximum compensation limit.

Smurfit–Stone appealed to the full commission, which affirmed the single commissioner's findings. It then appealed to the circuit court, which affirmed the full commission. This appeal follows.

## ISSUES

I. Did the circuit court err in finding Eaddy sustained a compensable injury?

II. Did the circuit court err in finding Eaddy was totally and permanently disabled?

III. Did the circuit court err in failing to find Smurfit–Stone was entitled to a credit for accident and sickness benefits, as well as previous workers' compensation payments?

IV. Did the circuit court err in affirming the full commission's order because the order was made in violation of the South Carolina Administrative Procedures Act (APA)?

## STANDARD OF REVIEW

The APA establishes the standard of review for decisions by the South Carolina Workers' Compensation Commission. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981); *Adkins v. Georgia–Pacific Corp.*, 350 S.C. 34, 36–37, 564 S.E.2d 339, 340 (Ct.App.2002). An appellate court may reverse or modify a decision if the findings or conclusions of the commission are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." S.C.Code Ann. § 1–23–380(A)(6) (Supp.2002); *Adams v. Texfi Indus.*, 341 S.C. 401, 404, 535 S.E.2d 124, 125 (2000). Substantial evidence is evidence that, considering the entire record, allows reasonable minds to reach the same conclusion reached by the full commission. *Miller v. State Roofing Co.*, 312 S.C. 452, 454, 441 S.E.2d 323, 324–25 (1994).

## LAW/ANALYSIS

### I. Compensable Injury

Smurfit–Stone first argues the circuit court erred in affirming the full commission's finding that Eaddy sustained a

compensable hernia injury. It contends Eaddy failed to prove the necessary statutory elements under S.C.Code Ann. § 42–9–40, and further failed to prove an injury by accident arising out of and in the course of his employment pursuant to S.C.Code Ann. § 42–1–160. We disagree.

In order to be entitled to compensation for an injury under the South Carolina Workers' Compensation Act, a claimant must show he suffered an "injury by accident arising out of and in the course of employment." S.C.Code Ann. § 42–1–160 (Supp.2002). The term "arising out of" refers to the origin of the cause of the accident. *Dukes v. Rural Metro Corp.,* 346 S.C. 369, 373, 552 S.E.2d 39, 41 (Ct.App.2001). An accidental injury is considered to arise out of one's employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Id.* An injury occurs within the course of employment when it occurs within the period of employment, at a place where the employee reasonably may be in the performance of his duties, and while fulfilling those duties or engaged in something incidental thereto. *Broughton v. South of the Border,* 336 S.C. 488, 498, 520 S.E.2d 634, 639 (Ct.App. 1999). There is substantial evidence from both Eaddy and Dr. Anderson that Eaddy sustained the hernia injury as a result of his working on a piece of equipment during the course of his employment.

Additionally, a person seeking workers' compensation benefits for a hernia or rupture must prove to the Commission's satisfaction:

(1) That there was an injury resulting in hernia or rupture;

(2) That the hernia or rupture appeared suddenly;

(3) That it was accompanied by pain;

(4) That the hernia or rupture immediately followed an accident; and

(5) That the hernia or rupture did not exist prior to the accident for which compensation is claimed.

S.C.Code Ann. § 42–9–40 (1985).

Here, Dr. Anderson's testimony indicates that Eaddy suffered an injury resulting in a hernia. Additionally, Eaddy testified that he was working with a twenty-five to thirty

pound instrument when he felt a sharp pain. His co-worker verified that Eaddy complained at the time, and indicated he was going to First Aid. Other employees confirmed, that as the shift advanced, Eaddy continued to complain until he ultimately told one of his superiors that he had "pulled the hernia loose again." Further, Dr. Anderson documented that Eaddy told him he was injured when he lifted something at work and that he felt a pull in his abdomen and subsequent pain. Thus, there is substantial evidence of record that Eaddy suffered an injury resulting in a hernia, the hernia appeared suddenly, it was accompanied by pain, and it immediately followed an accident when Eaddy attempted to lift a heavy piece of machinery at work.

Smurfit–Stone contends that the evidence does not substantially support a finding that Eaddy satisfied the final element of S.C.Code Ann. § 42–1–160, which requires that the hernia did not exist prior to the accident for which compensation is claimed. In support of its position, Smurfit–Stone relies on Eaddy's four previous hernia operations and the characterization of Eaddy's condition as a "recurring hernia." We find this argument unavailing.

Testimony from Dr. Bolick indicates, although he used the term "recurring hernia" in his report, it was really a misnomer. He noted that his repair to Eaddy's last hernia, prior to the 1999 occurrence, was sound, and he discharged Eaddy, releasing him to full activity. Further, Dr. Anderson indicated when he referred to Eaddy's hernia as recurrent, he simply meant that Eaddy had previous hernias, but noted that the repairs of Eaddy's hernias were not always in the same location. Finally, Eaddy testified that from 1993, when he had his fourth hernia surgery, until July 20, 1999, he had not had any tearing feelings or any trouble with pain in his abdomen. Thus, we find there is substantial evidence of record that Eaddy's hernia did not exist prior to the accident for which compensation is claimed.

Based on our review of the record, we find substantial evidence supporting the Commission's finding that Eaddy suffered a compensable hernia injury.

## II. Total and Permanent Disability

 Smurfit–Stone next argues the circuit court erred in affirming the full commission's finding that Eaddy is totally and permanently disabled. We disagree.

 Total disability does not require complete helplessness; rather the inability to perform common labor is considered total disability for one who is not qualified by training or experience for any other employment. *Wynn v. Peoples Natural Gas Co. of S.C.*, 238 S.C. 1, 11, 118 S.E.2d 812, 817 (1961). On the other hand, if an employee is capable of performing other work that is continuously available to him, he will not be deemed totally disabled simply because he is unable to resume the duties of the particular occupation in which he is engaged at the time of his injury. *Id.* at 11, 118 S.E.2d at 817–18. In order to be entitled to total and permanent disability workers' compensation benefits for a work injury, the claimant must be unable to perform services other than those that are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist. *Id.* at 12, 118 S.E.2d at 818; *Colvin v. E.I. DuPont de Nemours Co.*, 227 S.C. 465, 474, 88 S.E.2d 581, 585 (1955). *See also Stephenson v. Rice Servs., Inc.*, 323 S.C. 113, 118, 473 S.E.2d 699, 702 (1996) ("Employees who because of a work-related injury can perform only limited tasks for which no reasonably stable market exists are considered totally disabled notwithstanding their nominal earning capacity.")

Here, both physicians attributed Eaddy's predisposition to hernias to the strenuous physical nature of his work. Each testified that, should he continue his work, he would likely sustain future hernias. In particular, Dr. Anderson, who performed surgery to treat the hernia upon which the claim in the present action is based, testified about the life-threatening nature inherent in the pursuit of any physical labor, even light yard work, by Eaddy. Dr. Anderson suggested that, at most, Eaddy would be capable of "sedentary type work." Although he served as a bank teller, he worked in that position over three decades ago and did so for only one year. Further, the work skills he developed over his thirty-five year career with Smurfit–Stone depended heavily on strenuous physical labor, which he can no longer safely perform. Given Eaddy's age

and the evidence of record that he has no current skills needed to perform any sedentary work, we find there is substantial evidence he has no skills for which a reasonably stable market exists. Accordingly, we find the record supports the Commission's finding that Eaddy is totally and permanently disabled.

### III. Credit for Total and Permanent Disability

 Smurfit–Stone further contends, assuming Eaddy is totally and permanently disabled, the circuit court erred in failing to find it is entitled to a credit offsetting its obligation by the amounts of (1) all accident and sickness benefits paid to Eaddy related to the present hernia, and (2) all workers' compensation benefits Eaddy received in the past while working for Smurfit–Stone for prior workers' compensation injuries.[1] We disagree.

Smurfit–Stone summarily asserts it is entitled to a credit for thirty-three weeks of accident and sickness benefits, which the claimant testified he received following the incident. It cites no law in support of this assertion, but merely claims an entitlement to the credit. This court has noted that short, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not preserved for our review. *Glasscock, Inc. v. United States Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct.App.2001). *See also R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 437, 540 S.E.2d 113, 120 (Ct.App.2000) (where no authority is cited and argument in brief is conclusory, issue is deemed abandoned); *First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (appellant was deemed to have abandoned issue where he failed to provide any argument or supporting authority). At any rate, even if this argument were properly presented to this court, we agree with the circuit court that, pursuant to *Muir v. C.R. Bard, Inc.*, 336 S.C. 266, 297–98, 519 S.E.2d 583, 599–600 (Ct.App. 1999), Smurfit–Stone is not entitled to a credit for the payments because there is no evidence of record that the accident

---

1. Although it is questionable whether Smurfit–Stone raised this issue to the single commissioner, it is clear it was raised before both the full commission and the circuit court, and was addressed by the circuit court in its order.

and sickness benefits were made with reference to liability under the provisions of the Workers' Compensation Act.

■ In like summary fashion, Smurfit–Stone further asserts it is entitled to a credit for all benefits Eaddy received from past workers' compensation injuries because he is only entitled to "compensation for the degree of disability which would have resulted had he not suffered from prior hernias pursuant to S.C.Code Ann. §§ 42–9–150, 42–9–160, and 42–9–170." Assuming arguendo that Smurfit–Stone has not abandoned this issue based on its conclusory argument, we find no merit to its position.

South Carolina Code Ann. § 42–9–150 provides:

If an employee **has a permanent disability or** has sustained a **permanent injury** in service in the Army or Navy of the United States or in another employment **other than that in which he receives a subsequent permanent injury** by accident, such as specified in § 42–9–30 or the second paragraph of § 42–9–10 he shall be entitled to compensation only for the degree of disability which would have resulted from the later accident if the earlier disability or injury had not existed, except that such employee may receive further benefits as provided by §§ 42–7–310, 42–9–400 and 42–9–410 Title (sic) if his subsequent injury qualifies for additional benefits provided therein.

S.C.Code Ann. § 42–9–150 (1985) (emphasis added). As noted by the circuit court, pursuant to this statute, an employer would only be entitled to credit for previous awards of workers' compensation benefits involving permanent disability. There is no evidence of record, however, that Eaddy ever sustained a previous permanent injury or received any permanent benefits for such an injury. The only evidence of any prior workers' compensation benefits received by Eaddy were temporary total benefits paid by Smurfit–Stone. Neither is there evidence that Eaddy sustained a previous injury in service in the Army or Navy or in another employment besides that of Smurfit–Stone. Accordingly, this statute is inapplicable to the present situation.

South Carolina Code Ann. § 42–9–160 provides:

If an employee receives an injury for which compensation is payable **while he is still receiving or entitled to compen-**

**sation for a previous injury** in the same employment, he shall not at the same time be entitled to compensation for both injuries, **unless the later injury be a permanent injury** such as specified in § 42–9–30 or the second paragraph of § 42–9–10, but he shall be entitled to compensation for that injury and from the time of that injury which will cover the longest period and the largest amount payable under this Title.

S.C.Code Ann. § 42–9–160 (1985) (emphasis added). We first note this statute is inapplicable as there is no evidence Eaddy was "still receiving or entitled to compensation" for his previous hernias. Further, Eaddy would fall under the exception of the provision since his latter hernia has been determined to be a permanent injury.

Finally, South Carolina Code Ann. § 42–9–170 provides in pertinent part:

**If an employee receives a permanent injury** as specified in § 42–9–30 or the second paragraph of § 42–9–10 **after having sustained another permanent injury in the same employment,** he shall be entitled to compensation for both injuries, but the total compensation shall be paid by extending the period and not by increasing the amount of weekly compensation, and in no case exceeding five hundred weeks.

S.C.Code Ann. § 42–9–170 (1985) (emphasis added). Again, because Eaddy did not suffer a permanent injury from the previous hernias, this statute is immaterial.

Accordingly, we find no error in the circuit court's refusal to find Smurfit–Stone was entitled to any credit for accident and sickness benefits [2] or previous workers' compensation benefits.

## IV. Commission's Order

Smurfit–Stone next contends that the circuit court erred in affirming the Commission's order, alleging the order violated the South Carolina Administrative Procedures Act (Act). We disagree.

The Act provides, in pertinent part:

---

**2.** As in *Muir*, 336 S.C. 266, 298 n. 1, 519 S.E.2d 583, 600 n. 1, we express no position on Smurfit–Stone's subrogation rights for the accident and sickness benefits.

A final decision or order adverse to a party in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

S.C.Code Ann. § 1–23–350 (1986). Here, Smurfit–Stone contends that the Commission's order, which generally affirmed the single commissioner, lacked separately stated findings of fact and conclusions of law. It also contends the order lacked an explicit statement of the underlying facts supporting the Commission's findings, as well as separately stated conclusions of law. We find this argument unavailing.

The Commission incorporated the single commissioner's order by reference as if set forth verbatim within the Commission's order. The Commission's order stated, in part:

> [W]e, the appellate panel have reviewed the Award and weighed the evidence as presented at the initial hearing. We have also considered all issues raised [in Eaddy's and Smurfit–Stone's briefs].

> After careful review in the instant case, the appellate panel of the [Commission] has determined that all of the Hearing Commissioner's Findings of Fact and Rulings of Law are correct as stated. We find that such Findings of Fact and Conclusions of Law are hereby **included** in this Order by ***reference,*** and by such ***reference,*** the requirements of *Baldwin v. James River Corporation, 304 S.C. 485, 405 S.E.2d 4,* (sic) [421] as well as Sections 42–17–40 and 1–23–350 of the South Carolina Code of Laws have been met.

The opinion also contained a footnote that stated:

> It should be noted that the findings of fact and conclusions of law as contained in the single commissioner's order are specifically referenced and included *in toto* in the "order" portion of this decision so as to comply with the requirements of *Baldwin v. James River Corp., 304 S.C. 485, 405 S.E.2d 4* [421],[3] as well as [the APA]. In the interest of

---

**3.** It should be noted the correct citation is *Baldwin v. James River Corp.,* 304 S.C. 485, 405 S.E.2d 421 (Ct.App.1991). In *Baldwin,* this court determined the findings of fact in the Commission's order, reversing the single commissioner's finding of compensability, were conclusory, and

brevity they have not been repeated in the body of this order.

We find the Commission's incorporation of the single commissioner's findings of fact and conclusions of law by reference provided the circuit court with sufficiently definite and detailed findings to allow the circuit court to ascertain whether the findings by the Commission were supported by the evidence and whether the law was correctly applied. Accordingly we find the Commission's order complied with the pertinent provisions of the APA.

For the foregoing reasons, the decision of the circuit court is **AFFIRMED.**

CONNOR and ANDERSON, JJ., concur.

remanded the case to the Commission to make sufficient findings of fact to afford a reasonable basis for appellate review.