GEATHERS, J.:
**134 Robert Harrison, an employee of Owen Steel Company, appeals the decision of the Appellate Panel of the Workers' Compensation Commission (Appellate Panel) denying his claim for compensation for injuries sustained from an admitted workplace accident occurring on September 17, 2008. Harrison argues the Appellate Panel erred in finding his claim was barred by the doctrine of laches and the occurrence of intervening accidents. We affirm.
**135 FACTS/PROCEDURAL HISTORY
In September 2008, Harrison suffered an admitted workplace injury to his neck while working for Owen Steel Company as a gantry welder. Harrison indicated he had neck pain that radiated behind his left shoulder blade down his left arm to his elbow. Owen Steel provided medical treatment through Dr. Thomas Holbrook, who performed a cervical-spine fusion at C5-C6 in November 2009. After the surgery, Harrison returned to work on light duty.
Harrison was then involved in a motorcycle accident in April 2010. As a result of the accident, Harrison suffered a left clavicle fracture and abrasions to the left side of his head, right arm and palm, and both knees. However, the emergency room doctor's notes indicate Harrison denied having pain in his head or neck.
In July 2010, Dr. Holbrook released Harrison at Maximum Medical Improvement (MMI) with a fifty-pound lifting restriction and "a 25% impairment to the whole person." Dr. Holbrook's notes indicate Harrison was doing well and had no radicular arm pain but, going forth, might occasionally experience some discomfort that could be relieved with aspirin. Harrison returned to work full time as a welder.
Dr. Donald Johnson performed an independent medical evaluation of Harrison in September 2010. Dr. Johnson noted Harrison had returned to work as a welder and observed Harrison had degenerative changes to his spine above the cervical fusion, specifically C3-C4 and C4-C5. On September 29, similar to Dr. Holbrook, Dr. Johnson believed Harrison had reached MMI and assigned him a 25% impairment rating to the whole person.
In early October 2010, Harrison reinjured his neck at work. The doctor's notes from the emergency room visit state that Harrison lifted a fifty-pound roll of wire and felt a sharp pain in his neck that "radiated down to his upper back and down his left arm." Dr. Raymond Sweet examined Harrison a month after Harrison's second workplace injury. Dr. Sweet knew of Harrison's previous surgery by Dr. Holbrook. Dr. Sweet noted Harrison *435 stated he had never completely recovered and still had pain in his left arm that was getting worse. At a follow-up visit two weeks later, Dr. Sweet reevaluated Harrison and **136 recommended against a posterior fusion, further noting that Harrison was experiencing reduced neck pain and no arm pain. Dr. Sweet released Harrison at MMI with a 15% whole-person impairment and allowed Harrison to return to work with a restriction not to lift more than thirty pounds.
Harrison returned to work on light duty, working in the tool room for the entirety of 2011. During that time, Harrison filed a workers' compensation claim for his 2010 workplace injury. Owen Steel settled the claim in August 2011 for $42,193.63. Sometime near the end of 2011, Harrison transitioned back to work as a welder.
In February 2012, Harrison suffered another injury while picking up his young daughter, who had fallen off of a porch. As a result of the injury, Harrison went to Doctors Express. The records from that visit indicate Harrison's chief complaint was neck pain. Harrison had a follow-up visit with Dr. Holbrook a month later. Dr. Holbrook's notes indicate Harrison complained of pain in his neck and right arm that radiated down into his hand with numbness and tingling in his fingers. Harrison contends he never complained of neck pain.
Harrison became a shop foreman, a supervisory position with higher pay, in August 2012. Although his position is less physically demanding, Harrison is occasionally required to perform the tasks he supervises, including welding, turning beams, and cleaning up.
On April 18, 2013, Harrison filed a Form 50 seeking compensation for injuries sustained in his 2008 workplace injury.[1] Owen Steel argued, among other things, Harrison had failed to file the claim within the applicable two-year statute of limitations. After a hearing, the single commissioner found Harrison's claim was barred by the two-year statute of limitations. Harrison appealed to the Appellate Panel, which reversed the single commissioner and found Harrison had complied with the statute of limitations by filing a claim letter in September 2009. The Appellate Panel remanded the case "for **137 findings with regard to issues of intervening accidents, laches, and permanency."
On remand, the single commissioner found Harrison's claim was barred by the doctrine of laches. The single commissioner also found that even if laches did not bar Harrison's claim, it would be impossible to determine Harrison's entitlement to permanent partial disability benefits because of intervening accidents. Further, the single commissioner found Harrison had "not met his burden of proving by [a] preponderance of the evidence as to what his causally related condition was as a result of" his 2008 workplace injury. The Appellate Panel affirmed. This appeal followed.
ISSUES ON APPEAL
1. Did the Appellate Panel err in considering the affirmative defense of laches?
2. Did the Appellate Panel err in concluding Harrison's claim was barred by laches?
3. Did the Appellate Panel err in concluding Harrison's claim was barred by intervening accidents?
4. Did the Appellate Panel err in concluding Harrison was not entitled to an award of permanent partial disability or continuing medical benefits?
STANDARD OF REVIEW
An appellate court may reverse a decision by the Appellate Panel if it is affected by an error of law or is clearly erroneous in view of the substantial evidence. S.C. Code Ann. § 1-23-380(5)(d)-(e) (Supp. 2017). " 'Substantial evidence' is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the *436 conclusion that [the Appellate Panel] reached or must have reached" to support its order. Lark v. Bi-Lo, Inc. , 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981) (quoting Law v. Richland Cty. Sch. Dist. No. 1 , 270 S.C. 492, 495-96, 243 S.E.2d 192, 193 (1978) ).
"The Appellate Panel is the ultimate fact finder in Workers' Compensation cases and is not bound by the single **138 commissioner's findings of fact." Hall v. Desert Aire, Inc. , 376 S.C. 338, 348, 656 S.E.2d 753, 758 (Ct. App. 2007). When "there are conflicts in the evidence over a factual issue, the findings of the Appellate Panel are conclusive." Id. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Tiller v. Nat'l Health Care Ctr. of Sumter , 334 S.C. 333, 338, 513 S.E.2d 843, 845 (1999). An appellate court "may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact." § 1-23-380(5).
LAW/ANALYSIS
The Appellate Panel denied Harrison's claim for permanent partial disability benefits associated with his 2008 workplace injury. We affirm this ruling, albeit for reasons different from those underlying the Appellate Panel's decision and the parties' arguments. See Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, decision[,] or judgment upon any ground(s) appearing in the Record on Appeal."); see also Bartles v. Livingston , 282 S.C. 448, 465, 319 S.E.2d 707, 717 (Ct. App. 1984) (stating an appellate court "is not limited to the reasoning of the parties or the trial court in addressing" the issues before it); id. ("If we were bound to conform our opinions strictly to the arguments and reasoning of the parties, the result would often be bad decisional law.... To confine ourselves solely to the reasoning of the parties would be an abdication of our duty as judges to decide cases independently and impartially in accordance with the law."). Although the Appellate Panel relied on laches in making its ruling, we find laches does not apply.[2]
**139 Harrison argues this court should focus solely on the impairment ratings issued by Dr. Holbrook and Dr. Johnson for Harrison's first injury and disregard the impairment rating issued by Dr. Sweet for Harrison's second injury to the same body part. He argues the reports of Dr. Holbrook and Dr. Johnson conclusively established he suffered a 25% whole-person impairment from his September 2008 injury. We disagree.
We are unable to discover any cases similar to the unique posture of this case-an employee who suffers two workplace injuries to the same body part, receives compensation for the second injury first, suffers additional non-workplace injuries to the same body part, then seeks compensation for the first workplace injury.[3] However, our supreme *437 court's opinion in Medlin v. Greenville County , 303 S.C. 484, 401 S.E.2d 667 (1991) is instructive. In Medlin , the court found "that an employee who has suffered a fifty percent or more loss of use of his back and has received total and permanent compensation for this loss, is not entitled to any further total and permanent benefits for successive injuries to that same body part." 303 S.C. at 488-89, 401 S.E.2d at 669. The court's rationale was that any additional compensation would create a windfall because the person has already received compensation for total loss of use of the body part. See **140 Stephenson v. Rice Servs., Inc. , 323 S.C. 113, 118 n.2, 473 S.E.2d 699, 702 n.2 (1996). The Medlin court further stated, "Only if [the] employee had suffered less than fifty percent loss of use to his back in the first accident, would he have been entitled to compensation for the degree of disability [that] would have resulted from the later accident ." 303 S.C. at 488, 401 S.E.2d at 669 (emphasis added); see Hopper v. Firestone Stores , 222 S.C. 143, 153, 72 S.E.2d 71, 76 (1952) (finding language from the predecessor of section 42-9-150 stating an employee "shall be entitled to compensation only for the degree of disability which would have resulted from the later accident if the earlier disability or injury had not existed" clearly evidenced "legislative intent to prevent double compensation"). This indicates that for a claimant to be entitled to additional permanent partial disability compensation for a second injury, when the claimant has already received permanent partial disability compensation for a previous injury to the same body part, the evidence must show the degree of disability attributable only to the second injury in order to avoid double compensation.
Our worker's compensation law refers to the American Medical Association's Guides to the Evaluation of Permanent Impairment (5th ed. 2000) (AMA Guides) to determine whole person impairment ratings when an employee has an unscheduled injury. See S.C. Code Ann. Regs. 67-1101(B) (2012) ; Therrell v.Jerry's Inc. , 370 S.C. 22, 28, 633 S.E.2d 893, 896 (2006). The AMA Guides also recognize that impairment ratings can change from prior ratings-"unanticipated changes may occur: the condition may have become worse as a result of aggravation or clinical progression, or it may have improved ." AMA Guides at 21. (emphasis added). The AMA Guides address how to determine the impairment rating attributable to a second injury to the same body part: "[T]he most recent permanent impairment rating is calculated, and then the prior impairment rating is calculated and deducted." Id. at 12. The AMA Guides provide an example related to successive spine impairments:
[I]n apportioning a spine impairment, first the current spine impairment rating is calculated, and then an impairment rating from any preexisting spine problem is calculated. The value for the preexisting impairment rating can be subtracted **141 from the present impairment rating to account for the effects of the intervening injury or disease.
Id. at 21.
Our courts have not previously had an opportunity to address the issue, but the Supreme Court of Appeals of West Virginia, referring to the Fourth Edition AMA Guides, has addressed apportioning impairment between two successive workplace injuries to the same body part.[4] Wagner v. Workers' Compensation Div. , 205 W.Va. 186, 517 S.E.2d 283, 284, 287-88 (1998) ; see also 8 Lex K. Larson, Larson's Workers' Compensation § 92.02D[6] (Matthew Bender, Rev. Ed.) (listing decisions of various jurisdictions regarding successive injuries to the same body part). In Wagner , an employee injured her back at work and was awarded a 22% impairment rating for permanent partial disability. 517 S.E.2d at 284. Eleven years later, the employee reinjured her back. Id. Two doctors *438 opined the employee had a current whole person impairment rating of at least 10%. Id. at 287. The first doctor was of the opinion that the previous injury had "very little" effect on the current injury and, therefore, the employee was entitled to 10% additional impairment. Id. The second doctor determined, however, that because the injuries occurred at the same location, the employee's current impairment rating had to be apportioned. Id. "[T]o calculate the impairment caused by an injury sustained at the same location as an earlier injury, the physician first determines the patient's whole person impairment and then subtracts the amount of impairment caused by the earlier injury. The amount remaining is attributable to the newer injury." Id. at 284. Applying this standard, the doctor determined the employee had no additional impairment as a result of her second injury because deducting the previous impairment (22%) from the current impairment (10% or 15%) would result in a negative number. Id. ; see, e.g. , **142 Cummings v. Omaha Pub. Schs. , 6 Neb.App. 478, 574 N.W.2d 533, 540 (1998) (finding a claimant was entitled to receive compensation for only the additional 5% disability attributable to his subsequent injury because he was already compensated for his prior disability to the same body part).
The Wagner court affirmed the finding of the Workers' Compensation Appeal Board that the first doctor's opinion was unreliable because it failed to account for the previous 22% disability-stating the first doctor disregarded the permanency of the employee's previous disability and seemingly opined the disability had cured itself. 517 S.E.2d at 287. The court stated the only reliable evidence was the second doctor's report, which found, pursuant to the AMA Guides, the employee had suffered no additional impairment as a result of her second injury. Id.
Here, days after Dr. Johnson determined Harrison reached MMI from his 2008 injury, assigning a 25% whole person impairment, Harrison re-injured his cervical spine at work and was examined by Dr. Sweet. Dr. Sweet acknowledged Harrison's spinal fusion by Dr. Holbrook and Harrison's fifty-pound lifting restriction. Dr. Sweet determined Harrison had reached MMI from his 2010 injury and pursuant to the AMA Guides, assigned Harrison a 15% whole person impairment rating. Harrison filed and settled a compensation claim based on Dr. Sweet's report.[5]
We find Harrison is not entitled to any additional permanent partial disability benefits. Medlin and Hopper support the proposition that an employee, if compensated for a first injury to the back, is entitled to compensation for the degree of disability associated with only the second injury. The logical corollary is that the order in which an employee settles two compensable injuries would not matter so long as the injuries are distinguishable. The AMA Guides require physicians to distinguish successive injuries to the same body part and acknowledge that impairment ratings, although permanent, can change because the employee has improved. Following Wagner's approach to the AMA Guides-the second doctor's **143 finding of a lesser impairment percentage reflected the employee's current condition after both injuries-Harrison is entitled to only the compensation he received for his second injury because the 15% impairment represents the totality of his impairment resulting from his 2008 and 2010 workplace injuries. Indeed, Dr. Sweet's recognition of Harrison's previous injury yet his issuance of a lower impairment rating is telling. Cf. Burnette v. City of Greenville , 401 S.C. 417, 423, 737 S.E.2d 200, 203 (Ct. App. 2012) (noting a doctor increased the initial impairment rating he assigned to an employee, from 10% cervical spine impairment to 28% whole person impairment, after learning the employee had previous impairments including a lumbar spine injury ).
We acknowledge the purpose of workers' compensation law is to compensate a worker for injuries occurring in the course and scope of employment and that the law must be construed in favor of coverage. See James v. Anne's Inc. , 390 S.C. 188, 198, 701 S.E.2d 730, 735 (2010) ("[W]orkers' compensation law is to be liberally construed in favor *439 of coverage in order to serve the beneficent purpose of the Act...."). However, this policy is not implicated because Harrison has received compensation for the combined effect of his workplace injuries. Moreover, additional compensation is not warranted considering our courts' express proscription against double recovery. See Hopper , 222 S.C. at 153, 72 S.E.2d at 76 (finding language from the predecessor of section 42-9-150 stating an employee "shall be entitled to compensation only for the degree of disability which would have resulted from the later accident if the earlier disability or injury had not existed" clearly evidenced "legislative intent to prevent double compensation").
We doubt the legislature intended to allow an employee, who has suffered successive injuries to the same body part close together in time, to circumvent the operation of statutes entitling an employer to credit for previously paid permanent disability benefits by seeking compensation for the second injury before seeking compensation for the first injury. See Hodges v. Rainey , 341 S.C. 79, 87, 533 S.E.2d 578, 582 (2000) ("A choice of language in [an] act will not be construed with literality when to do so will defeat the lawmakers' manifest intention, and a court will reject the ordinary meaning of **144 words used in a statute when, to accept the ordinary meaning, will lead to a result so plainly absurd that it can not possibly have been intended by the legislature." (quoting S.C. Bd. of Dental Exam'rs v. Breeland , 208 S.C. 469, 480, 38 S.E.2d 644, 650 (1946) )); id. ("[T]his [c]ourt has interpreted statutes in accord with legislative intent despite contrary literal meaning in cases where there has been an oversight by the legislature that is clearly in conflict with the overall intent of the statute....").
Therefore, we affirm the Appellate Panel's decision denying Harrison's claim for permanent partial disability benefits associated with his 2008 workplace injury.
AFFIRMED.
SHORT and KONDUROS, JJ., concur.

Harrison has been involved in two motor vehicle accidents since the filing of his claim, one in July 2013 and one in March 2014. Harrison visited a doctor for the 2014 accident and the medical notes indicate Harrison had "pain from the top of his neck to the top of his right buttocks."

"Laches is neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done." Muir v. C.R. Bard, Inc. , 336 S.C. 266, 296, 519 S.E.2d 583, 598 (Ct. App. 1999). "The party asserting laches has the burden of showing negligence, the opportunity to act sooner, and material prejudice." Richey v. Dickinson , 359 S.C. 609, 612, 598 S.E.2d 307, 309 (Ct. App. 2004). "In order to constitute laches, the delay in bringing suit must have caused some injury, prejudice[,] or disadvantage to the party claiming laches." Provident Life & Accident Ins. Co. v. Driver , 317 S.C. 471, 479, 451 S.E.2d 924, 929 (Ct. App. 1994). The Appellate Panel found Owen Steel had been prejudiced because Harrison had suffered multiple successive injuries to the same body part making it difficult to determine his entitlement to disability benefits without speculating. We disregard this reasoning because Dr. Holbrook and Dr. Johnson examined Harrison before any of his successive injuries and determined he had suffered a 25% whole-person impairment as a result of his September 2008 injury.

This procedural posture was purposeful. Harrison's counsel conceded at oral argument that former counsel sought compensation for the second injury before the first injury in order to circumvent sections 42-9-150 to -170 of the South Carolina Code (2015), which, if Harrison had received compensation for the first injury before the second injury, would have entitled Owen Steel to credit for the permanent disability benefits it would have paid for Harrison's first injury. See Eaddy v. Smurfit-Stone Container Corp. , 355 S.C. 154, 165-66, 584 S.E.2d 390, 396-97 (Ct. App. 2003) (finding an employer was not entitled to credit for previously paid disability benefits pursuant to sections 42-9-150 to -170 because there was no evidence the claimant had previously suffered a permanent injury).

South Carolina law has discussed apportionment in another context not relevant here. See Geathers v. 3V. Inc. , 371 S.C. 570, 576-79, 641 S.E.2d 29, 32-34 (2007) (rejecting apportionment of liability as a solution to the "successive-carrier problem," occurring "when a worker suffers successive workplace injuries with an intervening change of employers or" insurance carriers, and adopting the "last injurious exposure" rule).

Harrison received $43,193.63 in compensation-Dr. Sweet's 15% whole-person impairment rating converted to a 28% loss of use of the back, representing eighty-four weeks of compensation at Harrison's average weekly wage.